## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| JASON CARTER, | Case No. 4:19-cv-00401-CRW-CFB |
| Plaintiff, | |
| v. | |
| MARK LUDWICK, Agent of Iowa Department of Criminal Investigation, in his official capacity; | **DEFENDANTS' BRIEF IN SUPPORT OF RULE 12(b)(6) PRE-ANSWER MOTION TO DISMISS** |
| MARION COUNTY, IOWA; | |
| REED KIOUS, Marion County Deputy Sheriff in his individual capacity; | |
| BILLY GENE CARTER, | |
| Defendants. | |

**COME NOW** the Defendants Marion County, Iowa ("the County") and Reed Kious, Marion County Sheriff in his individual capacity ("Kious"), by and through undersigned counsel, and for their Brief in Support of their Rule 12(b)(6) Pre-Answer Motion to Dismiss, state as follows:

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 3

STANDARD OF REVIEW ............................................................................................. 3

ARGUMENT ................................................................................................................... 4

A. PLAINTIFF'S FIRST AMENDED COMPLAINT IS A "SHOTGUN PLEADING" WHICH IS IMPERMISSIBLE UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(a) AND (d) ............................................................ 5

B. THE COURT CAN CONSIDER THE ARREST WARRANT AND RESULTING DECISIONS FROM THE CRIMINAL AND CIVIL LAWSUITS UNDERLYING THIS ACTION ................................................................... 6

C. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST MUST BE DISMISSED ......................................................................... 7

D. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION MUST BE DISMISSED .................................................................. 9

E. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR MONELL LIABILITY MUST BE DISMISSED .......................................................................... 11

F. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR CONSPIRACY MUST BE DISMISSED ........................................................................ 13

G. PLAINTIFF'S 42 U.S.C. § 1985(2) CLAIM FOR OBSTRUCTION OF JUSTICE MUST BE DISMISSED.................................................... 14

H. PLAINTIFF'S 42 U.S.C. § 1985(2) CLAIM FOR WITNESS TAMPERING MUST BE DISMISSED ................................................................ 16

I. PLAINTIFF'S 42 U.S.C. § 1985(3) CLAIM FOR CONSPIRACY MUST BE DISMISSED ........................................................................ 17

J. PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION MUST BE DISMISSED ........................................................................ 18

K. PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS MUST BE DISMISSED ........................................................................ 19

L. PLAINTIFF'S CLAIM FOR NEGLIGENT INVESTIGATION MUST BE DISMISSED ........................................................................ 21

M. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES AGAINST THE COUNTY MUST BE DISMISSED .............................................. 24

CONCLUSION .......................................................................... 24

## INTRODUCTION

This case arises from the criminal investigation and subsequent legal proceedings following the murder of Shirley Carter. The criminal investigation took place over a couple of years and included investigating numerous tips and potential suspects. During the course of the investigation, Plaintiff Jason Carter became a person of interest in Shirley Carter's murder. While the investigation was ongoing, Jason Carter's father, Bill, initiated a wrongful death action in state court against Jason for the death of Shirley. Following the trial, the jury entered judgment in Bill's favor, finding Jason Carter civilly liable for Shirley Carter's murder.

After the civil trial had concluded, on December 16, 2017, an arrest warrant was issued for Jason Carter for the murder of Shirley Carter. Jason Carter was subsequently taken into custody by Marion County law enforcement. On December 22, 2017, the Marion County district court concluded there was probable cause to allow the criminal proceedings to move forward. Following the criminal trial, Jason Carter was acquitted by the jury on March 22, 2019. Jason Carter has now filed this lawsuit against his father, Bill, as well as Marion County and two of the law enforcement officers involved in the criminal investigation, for numerous causes of action relating to the underlying criminal investigation, criminal trial, and civil trial.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes this Court to dismiss any complaint failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, a Complaint must "contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  In ruling on a Rule 12(b)(6) motion, a district court must accept the factual allegations contained in the complaint as true.  *Iqbal*, 556 U.S. at 678.  However, legal conclusions and "formulaic recitation of the elements of a cause of action" may be properly set aside by the court.  *Id*.  In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim.  *Id*.  Consequently, plaintiffs are required to "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

Neither *Iqbal* nor *Twombly* changed the familiar axiom that when considering a Rule 12(b)(6) motion, all reasonable inferences are to be drawn in favor of the non-moving party.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).  However, it is not reasonable to infer liability for the misconduct alleged if a Complaint merely "tenders naked assertions devoid of further factual enhancements" or makes allegations that only set forth "the mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  Further, in evaluating the "calculus of plausibility" of the alleged conduct, the district court may draw upon its judicial experience and common sense, and may consider whether there are "more likely explanations" consistent with otherwise unactionable conduct.  *Id*. at 681.

## ARGUMENT

### A. PLAINTIFF'S FIRST AMENDED COMPLAINT IS A "SHOTGUN PLEADING" WHICH IS IMPERMISSIBLE UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(a) AND (d)

As an initial matter, Plaintiff's First Amended Complaint must be dismissed because it violates Federal Rule of Civil Procedure 8(a) and (d).  These rules provide that a pleading must contain a "**short and plain** statement of the claim showing that the plaintiff is entitled to relief," and the allegations must be "**simple, concise,** and direct."  Fed. R. Civ. P. 8(a) & (d) (emphasis added).  Plaintiff's First Amended Complaint—which contains 520-paragraphs—is a "shotgun pleading" and contains "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Sagez v. Glob. Agr. Invs., LLC*, No. 11-CV-3059-DEO, 2015 WL 1647921 at *4 (N.D. Iowa Apr. 14, 2015).

"Shotgun pleadings violate Rule 8's requirement to set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" and are "especially problematic when pleading numerous causes of actions with substantially different elements." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)); *see also Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1332 (11th Cir.1998) (urging district courts to intervene and prohibit shotgun pleadings, and explaining a 173-pargraph complaint's "general allegations operated as camouflage, obscuring the material allegations of [plaintiff's] claims and necessarily implying that all the allegations were material to each claim.").

Accordingly, Plaintiff's First Amended Complaint is improper and must be dismissed.

**B. THE COURT CAN CONSIDER THE ARREST WARRANT AND RESULTING DECISION FROM THE CRIMINAL PROCEEDINGS UNDERLYING THIS ACTION**

Ordinarily, under Rule 12(b)(6) motions, matters outside the pleadings are presented to the court, the court should treat the motion as being one for summary judgment, rather than as a motion to dismiss. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014). However, this rule is not absolute. The Eighth Circuit has held repeatedly that a court may consider materials outside the complaint itself on a motion to dismiss, without converting the motion into one for summary judgment, if the materials relied upon are "necessarily embraced by the complaint." *Enervations, Inc. v. Minnesota Mining & Mfg., Co.*, 380 F.3d 1066 (8th Cir. 2004).  Courts may also consider "some materials that are part of the public record or do not contradict the complaint…." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).  "For example, courts may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Id.* (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

This includes consideration of court orders following preliminary hearings in underlying criminal actions to determine whether probable cause exists to support criminal charges. *Sands v. McCormick*, 502 F.3d 263, 268 (3rd Cir. 2007); *Dias v. Elique*, 276 Fed.Appx. 596, 2008 WL 1913358, at *2 (9th Cir. Apr. 30, 2008) (affirming district court's granting of Rule 12(b)(6) motion to dismiss based upon determination in underlying criminal action that probable cause existed to investigate plaintiff).  It is also includes arrest warrants issued in the underlying criminal action. *Kennedy v. Peele*, 552 Fed.Appx. 787, 792 (10th Cir. 2014) (finding district court erred in not considering affidavit used to support

warrant for plaintiff's arrest in underlying criminal action in Rule 12(b)(6) Motion to Dismiss); *Beacham v. Annerino*, 82 F.3d 420 (Table), 1996 WL 175079 (7th Cir. Apr. 11, 1996) ("The district court could properly take judicial notice of [arrest warrants from the underlying criminal proceedings] in deciding the motion to dismiss."); *Torres-Lopez v. Olivo-Miranda*, 478 F.Supp.2d 182, 188 (D.P.R. 2007) ("The Court takes judicial notice of the existence of a warrant in support of Plaintiff Torres' arrest."). Finally, it also incudes jury verdicts from underlying actions. *E.g. Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F.Supp.2d 1334, 1352 (S.D. Iowa 2005) ("The Court will first take judicial notice of the jury verdict and this Court's own post-trial determinations that the '714 and '564 patents are valid and enforceable.").

Here, these authorities make clear the Court can consider the arrest warrant issued against Jason Carter (attached hereto as Exhibit A), a transcript from the contested preliminary hearing from the underlying criminal case (attached hereto as Exhibit B), and the jury verdict—which shows that the criminal case was given to the jury to resolve (attached hereto as Exhibit C).

## C.  PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST MUST BE DISMISSED

Plaintiff brings his 42 U.S.C. § 1983 claim for false arrest against Kious.  The law is clear that a claim for false arrest, brought under 42 U.S.C. § 1983, fails as a matter of law if the officer had probable cause to make the arrest, because such an arrest is not in violation of the Fourth Amendment.  *Rose v. City of Mulberry*, 533 F.3d 678, 680 (8th Cir. 2008); *Anderson v. Larson*, 327 F.3d 762, 770 (8th Cir. 2003); *Kurtz v. City of Shrewsbury*,

245 F.3d 753, 758 (8th Cir. 2001). "Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense' at the time of the arrest." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986)). In other words, the standard is "the probability, and not a prima facie showing, of criminal activity" for whether probable cause exists. *Id*.

Here, Plaintiff's claim must fail because Kious had probable cause to arrest Plaintiff. As Plaintiff makes clear in his Complaint, Plaintiff was acquitted of the criminal charges filed against him on March 22, 2019, which clearly indicates the acquittal was decided by a jury. Amended Complaint, ¶ 500; *see also* Exhibit C. However, in order for the criminal trial to have reached the jury, there would have been several instances in which the Court— a neutral third-party—determined that probable cause did exist to allow the criminal case to proceed. This occurred in the underlying case when the judge issued the Arrest Warrant for Jason Carter on December 16, 2017, which explicitly stated:

> [ X ] A Complaint having been filed, **the Court finds probable cause** to believe that the offense(s) set forth in the complaint have been committed and the defendant committed said offense.

Ex. A (emphasis added). It happened again on December 22, 2017 when the district court issued its Order Following Preliminary Hearing, in which the court stated:

> Based upon the substantial evidence presented, **the Court finds there is probable cause** to believe that the offense alleged in the complaint has been committed and that the Defendant committed it.

Ex. B (emphasis added). Finally, it happened a third time when, following both sides' presentation of their respective cases, the Court concluded that there was sufficient

evidence to submit the issue to the jury.  *See* Ex. C.  Each of these instances show that probable cause was found to exist at numerous instances during the criminal proceedings. Accordingly, probable cause existed to arrest and try Plaintiff for the murder of Shirley Carter and Plaintiff's false arrest claim must be dismissed.

### D. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION MUST BE DISMISSED

Plaintiff brings his 42 U.S.C. § 1983 claim for Due Process violation for alleged concealment of evidence against Kious.  Plaintiff bases his claim on Kious's actions from the underlying **civil** action.  Amended Petition, ¶¶ 450–61.  Plaintiff's claim must be dismissed, because there is no constitutional violation for failing to turn over exculpatory evidence.

Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it is a violation of the Due Process Clause for a prosecutor **in a criminal case** to suppress evidence that is favorable to an accused, irrespective of good faith or bad faith.  373 U.S. at 87.  Plaintiff's claim that Kious's alleged failure to turn over exculpatory evidence is seeking to have the Court apply a *Brady* requirement to civil actions.  However, "courts have only in rare instances found *Brady* applicable in civil proceedings, mainly in those unusual cases where the potential consequences 'equal or exceed those of most criminal convictions.'"  *Fox ex rel. Fox v. Elk Run Coal Co., Inc.*, 739 F.3d 131, 138–39 (4th Cir. 2014) (quoting *Demjanjuk v. Petrovsky*, 10 F.3d 338, 354 (6th Cir. 1993)).  In other words, courts only extend *Brady* to civil cases in cases where "a person's liberty is at stake." *Kashem v. Barr*, 941 F.3d 358, 387 (9th Cir. 2019).  The District Court for the District of

Columbia explained the limited scenarios in which *Brady* was applied to civil cases, stating the extension had only occurred in cases involving: 1) a Nazi war criminal was facing denaturalization and extradition in which the extradition would cause the individual to face trial on a charge carrying the death penalty; 2) civil commitment proceedings; and 3) when the government engaged in pleading a "skeleton complaint" in employment discrimination case and refused to provide any meaningful details to show defendant what it was accused of doing, making it impossible for defendant to defend against the allegations. *Brodie v. Dept. of Health and Human Srvs.*, 951 F.Supp.2d 108, 118–19 (D. D.C. 2013) (citing *Demjanjuk*, 10 F.3d (Nazi war criminal case); *United States v. Edwards*, 777 F.Supp.2d 985 (E.D.N.C. 2011) (civil commitment proceedings); *EEOC v. Los Alamos Constructors*, 382 F.Supp. 1373 (D.N.M. 1974) ("skeleton complaint" tactics).

Here, the underlying civil action was a wrongful death action.  This is not the type of case where the exception to the general rule that *Brady* is inapplicable to civil claims because Plaintiff's "liberty" was not at issue. *Kashem*, 941 F.3d at 387.  Instead, the civil action only sought monetary damages.  Accordingly, Plaintiff's claim must be dismissed as the Due Process Clause did not require the alleged exculpatory evidence be given to Plaintiff in the civil action. *Fox ex rel. Fox*, 739 F.3d at 138–39.

## E. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR MONELL LIABILITY MUST BE DISMISSED

Plaintiff brings his 42 U.S.C. § 1983 claim for *Monell* liability against the County. There are three separate ways an individual can pursue a *Monell* claim against a defendant. Municipal liability under § 1983 may attach if the constitutional violation "resulted from

(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Plaintiff's Complaint appears to allege claims under each of these three categories. *See* Doc. 1, ¶¶ 74–86.

Taking each type of claim in turn, in order to bring a *Monell* claim under the "official municipal policy," Plaintiff must show "the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007). To succeed in a *Monell* claim due to a governmental entity's "custom", Plaintiff must show:

> 1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> 2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> 3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Thelma D. By and Through Delores A v. Bd. of Educ. Of City of St. Louis*, 934 F.2d 929, 932–33 (8th Cir. 1991). Finally, in regards to the deliberate indifference in failure to train, Plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Regardless of the category alleged, a *Monell* claim requires that Plaintiff allege sufficient facts showing that the action alleged is not simply a single occurrence, but rather, is consistent with a widespread history of behavior. *See Thelma D.*, 934 F.2d at 932–33

(requiring a showing of a "widespread, persistent pattern of unconstitutional conduct" to set forth a prima facie *Monell* claim based upon a custom); *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991) ("Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom. By the same token, a single deviation from a written, official policy does not prove a conflicting custom or usage"); *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (quoting *Board of Cnty. Com'rs. of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997))).

Here, Plaintiff fails to provide any facts in his Complaint showing that the allegations extend beyond the single instance involving Plaintiff, other than providing simply conclusory allegations. Merely providing conclusory statements is not sufficient to establish a *Monell* claim. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a *Monell* claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of the plaintiff's rights); *see also Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable *Monell* claim "[t]he description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts."). Plaintiff's Count III must be dismissed.

### F.  PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR CONSPIRACY MUST BE DISMISSED

Plaintiff brings his 42 U.S.C. § 1983 claim for conspiracy against Kious.  The claim is based upon the decision to arrest and charge Plaintiff with the murder of Shirley Carter. Amended Complaint, ¶ 473.  In order to prove a 42 U.S.C. § 1983 claim for conspiracy, Plaintiff must show: 1) that Kious conspired with others to deprive Plaintiff of his constitutional rights; 2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; 3) that the overt act injured Plaintiff; and 4) that Plaintiff suffered a deprivation of a constitutional right or privilege.  *Burton v. St. Louis Bd. of Police Com'rs*., 731 F.3d 784, 798 (8th Cir. 2013).

Plaintiff's claim must be dismissed because, as explained above, there were numerous instances where the trial court determined that probable cause existed to allow the criminal trial to move forward, including: when the arrest warrant was issued against Jason Carter, it occurred again when the district court concluded following the contested preliminary hearing that probable cause existed to move forward with the criminal proceedings, and occurred again at trial, when, following both sides' presentation of their respective cases, the Court concluded that there was sufficient evidence to submit the issue to the jury.  *See* Exs. A, B, and C.  There is no constitutional violation for an arrest that is supported by probable cause.  *See e.g. Rose*, 533 F.3d at 680; *Anderson*, 327 F.3d at 770; *Kurtz*, 245 F.3d at 758.  Accordingly, this claim must be dismissed.

### G. PLAINTIFF'S 42 U.S.C. § 1985(2) CLAIM FOR OBSTRUCTION OF JUSTICE MUST BE DISMISSED

Plaintiff brings his 42 U.S.C. § 1985(2) claim for obstruction of justice against Kious.  The United States Supreme Court has stated that 42 U.S.C. § 1985(2) can be separated into two different causes of action: the first section relates to "intimidating party, witness, or juror" and the second part relates to "obstructing justice."  *Kush v. Rutledge*, 460 U.S. 719, 723–24 (1983).  This distinction is critical, as the second part of 42 U.S.C. § 1985(2) (as well as 42 U.S.C. § 1985(3), as is explained below) contains the requirement that the persons must have the "intent to deny to any citizen **the equal protection of the laws**, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, **to the equal protection of the laws**."  *See* 42 U.S.C. § 1985(2) (emphasis added).  However, the first part of 42 U.S.C. § 1985(2) does not make reference to an intent to deprive the person of the "equal protection of the laws."  *See id*.

The United States Supreme Court interpreted this critical language in regards to 42 U.S.C. § 1985(3)[1] in *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  The Supreme Court, concerned with the possibility of 42 U.S.C. § 1985(3) becoming a "general federal tort law," turned to the legislative history of 42 U.S.C. § 1985, and held that:

> The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that **there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action**. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

---

[1] 42 U.S.C. § 1985(3) makes reference to the "equal protection of the laws," as well as to "equal privilege and immunities under the law."

*Griffin*, 42 U.S. at 102 (emphasis added).   While *Griffin* was interpreting 42 U.S.C. § 1985(3), the "intent to deprive of equal protection" included in the Court's holding is present in the second party of 42 U.S.C. § 1985(2).  *See* 42 U.S.C. § 1985(2).

As such, other courts interpreting the second part of 42 U.S.C. § 1985(2) also require there to be a showing that the conspirator's actions had a racial, or otherwise class-based discriminatory intent to be found liable under the statute.  *E.g. Coleman v. Garber*, 800 F.2d 188, 191 (8th Cir. 1986) ("Second, they fail to state a cause of action under the second part of section 1985(2) because they fail to allege that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'"); *see also Kimble v. D. J. McDuffy, Inc.*, 648 F.2d 340, 347 (5th Cir. 1981) ("The Griffin analysis is not applicable to only a small part of Section 2 of the Ku Klux Klan Act,[2] but to the act in its entirety.  If racial or class-based animus is required by Section 1985(3), it is required by Section 1985(2) as well.")[3]; *Jones v. U.S.*, 401 F.Supp. 168, 173 (E.D. Ark. 1975) (holding that *Griffin* requirement of racial or other class-based animus must be shown under both sections of 42 U.S.C. § 1985(2).

Here, Plaintiff's Amended Complaint contains no allegation under this claim that Defendants were driven by some racial or otherwise class-based animosity towards

---

[2] 42 U.S.C. § 1985 was entitled the Ku Klux Klan Act, which demonstrates why the racial animus requirement is present for some of the claims under the statute.

[3] The cases stating that there must be a showing of racial or other class-based animus under both sections 42 U.S.C. § 1985(2) were decided prior to *Kush v. Rutledge*.  However, the *Kush* Court only removed the requirement from the first section of 42 U.S.C. § 1985(2), but not the second, which is why the distinction described above matters.

Plaintiff.  Without such allegations, Plaintiff's claim fails and must be dismissed.  *See*

*Coleman*, 800 F.2d at 191; *Kimble*, 648 F.2d at 347; *Jones*, 401 F.Supp. at 173.

## H. PLAINTIFF'S 42 U.S.C. § 1985(2) CLAIM FOR WITNESS TAMPERING MUST BE DISMISSED

Plaintiff brings his 42 U.S.C. § 1985(2) claim for witness tampering against Kious.

This claim is brought under the first section of 42 U.S.C. § 1985(2) and is based upon both

the underlying civil and criminal cases—both of which occurred in **state** court.  This fact

is vital, as the first section of 42 U.S.C. § 1985(2) provides:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness **in any court of the United States** from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; ... [an action for damages may lie].

42 U.S.C. § 1985(2) (emphasis added).

Federal courts interpreting this section have made clear that it applies only to actions

brought in the **federal courts**.  *Dooley v. Reiss*, 736 F.2d 1392, 1395 (9th Cir. 1984)

("Section 1985(2) consists of two parts: the first proscribes conspiracies to interfere with

the administration of justice in **federal courts**; the second applies to conspiracies to

obstruct the course of justice in state courts.") (emphasis added); *Knowlton v. Shaw*, 704

F.3d 1, 12, n. 15 (1st Cir. 2013) ("The first clause of § 1985(2) covers conspiracies to

interfere with justice in the **federal courts**.") (emphasis added); *Ongori v. City of Midland*,

No. 16-2793, 2017 WL 6759111, at *3 (6th Cir. Sept. 8, 2017) ("To state a claim under §

1985(2), a plaintiff must allege that two or more persons conspired to (1) intimidate a party, witness, or juror **in federal judicial proceedings** or (2) obstruct justice in state courts.") (emphasis added).

Accordingly, since Plaintiff's 42 U.S.C. § 1985(2) claim for alleged witness tampering occurred in state court proceedings, his claim fails as a matter of law and must be dismissed.

## I. PLAINTIFF'S 42 U.S.C. § 1985(3) CLAIM FOR CONSPIRACY MUST BE DISMISSED

Plaintiff brings his 42 U.S.C. § 1985(3) claim for conspiracy against both Kious and the County. As stated above, the United States Supreme Court has held that in order to state a claim under 42 U.S.C. § 1985(3), there must be a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102. However, Plaintiff's Amended Complaint makes no mention of Defendants acting with a racial or otherwise class-based discriminatory animus. Accordingly, this claim must be dismissed.

## J. PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION MUST BE DISMISSED

Plaintiff bases his malicious prosecution claim on the underlying criminal action in which Plaintiff was acquitted. This claim was brought against Kious. In order to set forth a claim for malicious prosecution, Plaintiff must show:

> (1) a previous prosecution; (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of [the] defendant for bringing the prosecution, and (6) damage to [the] plaintiff.

*Wilson v. Hayes*, 464 N.W.2d 250, 259 (Iowa 1990) (quoting *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988)).   In order to prove malice, Iowa courts require a showing that the defendant acted with an improper purpose in bringing about the criminal action. *Wilson v. Lapham*, 195 N.W. 235 (Iowa 1923) ("To constitute malice there must have been an improper motive or purpose."); *Schneider v. Rodgers*, 752 N.W.2d 33 (Table), No. 07-0471, 2008 WL 508481 (Iowa Ct. App. Feb. 27, 2008) ("The remedy's primary purpose is to provide relief in those cases in which a plaintiff brings a meritless suit and has an improper motive for bringing it.").   Plaintiff's claim fails for two reasons.   First, Plaintiff cannot satisfy the "want of probable cause" requirement, as that in order for the criminal trial to have reached the jury (which Plaintiff plead that it did), there were several instances in which the Court—a neutral third-party—determined that probable cause did exist to allow the criminal case to proceed.   As was explained above, probable cause was found to exist at numerous points during the underlying criminal action.   *See* Exs. A, B, and C. Accordingly, there was no "improper purpose" in Defendants' actions as there was probable cause to pursue criminal charges against Plaintiff.   This claim must be dismissed.

## K. PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS MUST BE DISMISSED

Plaintiff brings his abuse of process claim against Kious.   Plaintiff alleges three different grounds for the claim: 1) Kious's alleged role in causing the civil action to be brought against Plaintiff; 2) Kious's alleged failure to turn over exculpatory evidence to Plaintiff; and 3) Kious's involvement in arresting Plaintiff.   To set forth a claim for abuse of process, Plaintiff must show: 1) the use of a legal process; 2) its use in an improper or

unauthorized manner; and 3) she suffered damages as a result of the abuse.  *Fuller v. Loc. Union No. 106 of the United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 421-22 (Iowa 1997).

"Abuse of process . . . is the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so. . . .The improper use which is the essence of the tort is ordinarily an attempt to secure from another some collateral advantage not properly includable in the process itself, and is . . . a form of extortion in which a lawfully used process is perverted to an unlawful use." *Sarvold*, 237 N.W.2d at 449 (citations omitted) (internal quotations omitted).  Abuse of process differs from malicious prosecution in that an abuse of process claim may exist even when the plaintiff of the underlying suit had probable cause and was ultimately successful (*i.e.*, no malicious prosecution).  *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990).

"One who uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm cause by the abuse of process."  *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986) (quoting Restatement (Second) of Torts § 682 (1977)).  "The significance of [the] word [primarily] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose or benefit."  *Id.* (quoting Restatement (Second) of Torts § 682).  "For abuse of process to occur there must be use of that process for an immediate purpose other than that for which it was designed and intended.  The usual case of abuse of process is one of some form of extortion, using

the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." *Id.* (quoting Restatement (Second) of Torts § 682).

Here, no such showing can be made, as Defendants had a legitimate reason for pursuing criminal charges against Plaintiff.  As stated above, there were numerous instances during the criminal trial when the district court—a neutral third party—found there to be probable cause to pursue the charges.  As was explained above, probable cause was found to exist at numerous points during the underlying criminal action.  *See* Exs. A, B, and C.  Accordingly, the criminal proceedings were not brought for an improper purpose, and therefore, this claim must be dismissed.

## L.  PLAINTIFF'S CLAIM FOR NEGLIGENT INVESTIGATION MUST BE DISMISSED

Finally, Plaintiff brings a claim negligent investigation against Kious and the County.  This claim too must fail, as Iowa "does not recognize an independent tort for negligent investigation of crime by law enforcement officers." *Hildenbrand v. Cox*, 369 N.W.2d 411, 415 (Iowa 1985); *Lamp v. City of Bettendorf*, No. CIV 3-99-CV-30121, 2000 WL 33363167, at *7 (S.D. Iowa Dec. 21, 2000) ("police in Iowa do not have an actionable common law duty to either the perpetrator or the victim of an alleged crime with respect to the conduct of a criminal investigation or the decision to make an arrest and thereby initiate criminal proceedings.  Without a duty there is no tort.").

This conclusion is based upon the general rule recognized in Iowa, that police officers and other investigative agents do not owe a duty of care to specific individuals who are harmed during the course of a criminal investigation.  *Hildenbrand*, 369 N.W.2d at 415.

This rule also applies when the claims are brought against municipalities.   *Johnson v. Humboldt Cnty.*, 913 N.W.2d 256, 266–67 (Iowa 2018) (finding plaintiff's claim against County was barred by public duty doctrine).   Whether a duty arises from a given relationship is a question of law to be determined by the Court.   *Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009).   "The Iowa courts recognize the public duty doctrine which establishes that the duty of the police to protect the citizenry is owed to the public and not to individuals."   *Allen v. Anderson*, 490 N.W.2d 848, 856 (Iowa Ct. App. 1992) (internal citations removed).   "[A] breach of duty owed to the public at large is not actionable unless the plaintiff can establish, based upon the unique or particular facts of the case, a special relationship between the [government entity] and the injured plaintiff…."   *Johnson*, 913 N.W.2d at 260.

Notions of public policy are at the very heart of the cases interpreting and applying the public duty doctrine.   The public policy rationale justifying this general rule of non-liability is "to assure continued vigorous police work . . . ."   *Smith v. State*, 324 N.W.2d 299, 301 (Iowa 1982).   The *Hildenbrand* court articulated the applicable public policy as follows:

> The public has a vital stake in the active investigation and prosecution of crime.   Police officers and other investigative agents must make quick and important decisions as to the course an investigation shall take.   Their judgment will not always be right, but to assure continued vigorous police work, those charged with that duty should not be liable for mere negligence.

369 N.W.2d at 415.   Because police work should be carried out without hesitancy or second-guessing, Iowa recognizes a public policy assuring "police protection free from the chilling effect of liability for split-second decisions."   *Morris v. Leaf*, 534 N.W.2d 388, 390

(Iowa 1995); *see also Hawkeye Bank & Trust v. Spencer*, 487 N.W.2d 94, 97 (Iowa Ct. App. 1992) ("[The] public is better served by a policy that encourages the police to provide extra citizen protection without the fear of incurring liability for mistakes.").

The public duty doctrine is qualified by the existence of the following two exceptions:

> (1) Where the police create the situation which places the citizen's life in jeopardy; and
>
> (2) Where the police take a citizen into custody or control.

*Spencer*, 487 N.W.2d at 96.  Liability will not result in the absence of either of these two special relationships.  *Id.*  Iowa courts point to Restatement (Second) sections 314, 314A, 315, 319, and 320 as the basis for the exceptions to the public duty doctrine.  *Mastbergen v. City of Sheldon*, 515 N.W.2d 3, 5 (Iowa 1994) (citing *Hildenbrand*, 369 N.W.2d at 415).

The first exception to the public duty doctrine closely tracks the language of Restatement (Second) of Torts section 320.  This section provides:

> One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 320.

The second exception is based on the Restatement (Second) of Torts § 314A(4) (1965).  *Hildenbrand*, 369 N.W.2d at 415 (citing *Smith v. Miller*, 40 N.W.2d 597, 598–600

(Iowa 1950)).   Section 314A is titled "special relations giving rise to a duty to aid or protect."  The text of subsection 4 is instructive and is set forth as follows:

> One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Restatement (Second) of Torts § 314A(4).  The duty under this circumstance is "only one to exercise reasonable care under the circumstances."  *Id*. at cmt. e.

Neither exception to the public duty doctrine is applicable to the allegations set forth in Plaintiff's Complaint.  Accordingly, this claim must be dismissed.

## M. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES AGAINST THE COUNTY MUST BE DISMISSED

In the event that the Court does not dismiss all claims brought against the County, the Court dismiss Plaintiff's claims for punitive damages against the County.  Iowa Code § 670.4(1)(e) expressly provides that a municipality shall be immune from liability for "any claim for punitive damages."  Iowa Code § 670.4(1)(e); s*ee also Baldwin v. City of Estherville*, 929 N.W.2d 691, 698–99 (Iowa 2019) (holding that Iowa Code § 670.4(1)(e) "precludes an award of punitive damages against the municipality that employed the constitutional tortfeasor.").  Accordingly, Plaintiff's claim for punitive damages against the County must be dismissed.

## CONCLUSION

For the reasons set forth above, the Defendants, Marion County, Iowa and Reed Kious, Marion County Sheriff in his individual capacity, respectfully request the Court dismiss Plaintiff's Complaint in its entirety.

BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.


By:    */s/ Jason C. Palmer*
          Jason C. Palmer  AT0006089
          801 Grand Avenue, Suite 3700
          Des Moines, IA  50309-2727
          Phone:  (515) 243-4191
          Fax:  (515) 246-5808
          E-Mail:  palmer.jason@bradshawlaw.com

ATTORNEY FOR MARION COUNTY, IOWA;
REED KIOUS, Marion County Deputy Sheriff in his
individual capacity;

Original filed.

Copy to:

Glen S. Downey
**LAW OFFICES OF GLEN S. DOWNEY**
5214 Ingersoll Avenue
Des Moines, IA 50312
Tel: (412) 865-7110
Fax: (515) 259-7599
glen@downey-law.net

Christine E. Branstad
**BRANSTAD & OLSON LAW OFFICES**
2501 Grand Ave. Suite A
Des Moines, IA 50312
Telephone: (515) 224-9595
Facsimile: (515) 281-1474
Email: Branstad@BranstadLaw.com

Alison F. Kanne
**WANDRO & ASSOCIATES, P.C.**
2501 Grand Ave. Suite B
Des Moines, IA 50312
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
Email: akanne@2501grand.com

ATTORNEYS FOR PLAINTIFF

Mark E. Weinhardt
David N. Fautsch
**THE WEINHARDT LAW FIRM**
2600 Grand Avenue, Suite 450
Des Moines, IA 50312
Telephone: (515) 244-3100
E-mail: mweinhardt@weinhardtlaw.com
          dfautsch@weinhardtlaw.com

ATTORNEYS FOR DEFENDANT BILL GENE CARTER


Jeffrey C. Peterzalek
Tessa Register
**OFFICE OF THE ATTORNEY GENERAL OF IOWA**
1305 E. Walnut Street
Des Moines, IA 50309
Telephone: (515) 281-5164
E-mail: jeffrey.peterzalek@ag.iowa.gov
          Tessa.Register@ag.iowa.gov

ATTORNEYS FOR DEFENDANT MARK LUDWICK

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 30 of March, 2020 by:

☐ U.S. Mail          ☐ FAX
☐ Hand Delivered     ☐ UPS
☐ Federal Express    ☒ Other: E-file

/s/ Linda Righi