**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| JASON CARTER,<br><br>            Plaintiff,<br><br>v.<br><br>MARK LUDWICK, Agent of Iowa Department of Criminal Investigation, in his official capacity;<br><br>MARION COUNTY, IOWA;<br><br>REED KIOUS, Marion County Deputy Sheriff in his individual capacity;<br><br>BILLY GENE CARTER,<br><br>            Defendants. | Case No. 4:19-cv-00401-CRW-CFB<br><br><br>**DEFENDANTS REED KIOUS'S AND MARION COUNTY, IOWA'S REPLY BRIEF TO PLAINTIFF'S RESISTANCE TO DEFENDANTS' RULE 12(b)(6) PRE-ANSWER MOTION TO DISMISS** |

**COMES NOW** the Defendants, Marion County, Iowa and Reed Kious, Marion County Deputy Sheriff in his individual capacity, by and through undersigned counsel, and for their Reply Brief to Plaintiff's Resistance to Defendants' Rule 12(b)(6) Pre-Answer Motion to Dismiss, state as follow:

## TABLE OF CONTENTS

ARGUMENT................................................................................................................ 3

    A.    PLAINTIFF'S SECOND AMDENDED COMPLAINT MUST BE DISMISSED BECAUSE IT IS AN IMPERMISSIBLE "SHOTGUN PLEADING." ............................................................................................. 3

B.      THE COURT CAN CONSIDER THE EXHIBITS INCLUDED IN DEFENDANTS' PRE-ANSWER MOTION TO DISMISS, REGARDING THE ARREST WARRANT, THE DISTRICT COURT RULING FOLLOWING THE PRELIMINARY HEARING, AND THE JURY VERDICT FORM FROM THE UNDERLYING CRIMINAL TRIAL. .. 6

C.      PLAINTIFF'S COUNT I ALLEGING A VIOLATION 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST MUST BE DISMISSED. ...................... 7

D.      PLAINTIFF'S COUNT II ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION FOR ALLEGED CONCEALING OF EVIDENCE MUST BE DISMISSED. .................... 9

E.      PLAINTIFF'S COUNT III ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR MONELL LIABILITY MUST BE DISMISSED. ............. 10

F.      PLAINTIFF'S ARGUMENTS THAT HIS CONSPIRACY CLAIM IN VIOLATION OF 42 U.S.C. § 1983 MUST BE REJECTED BECAUSE PLAINTIFF DID NOT INCLUDE SUCH A CLAIM IN HIS SECOND AMENDED COMPLAINT...................................................................... 13

G.      PLAINTIFF'S COUNT IV ALLEGING MALICIOUS PROSECUTION MUST BE DISMISSED........................................................................... 13

H.      PLAINTIFF'S COUNT V ALLEGING ABUSE OF PROCESS MUST BE DISMISSED. ............................................................................ 15

        1.   Plaintiff's Arguments in Support of His Abuse of Process Claim Fail to Plead an Actionable Claim........................................................ 15

        2.   Plaintiff's Claim that Kious Abused the Underlying Civil Action in an Effort to Obtain Additional Statements and Evidence Fails to Support a Cause of Action for Abuse of Process......................................... 17

        3.   Plaintiff's Claim that Kious Abused the Underlying Civil Action by Allegedly Trying to "Shore Up" the Investigation to Maintain the Civil Judgment Fails to Support a Cause of Action for Abuse of Process............................................................................................. 19

        4.   Plaintiff's Claim that Defendant Kious "Conspired" with the Civil Plaintiffs in the Underlying Civil Action Fails to Support a Cause of Action for Abuse of Process. ........................................................ 20

I.      PLAINTIFF'S COUNT VI ALLEGING DUE PROCESS VIOLATION
        BROUGHT UNDER 42 U.S.C. § 1983 FOR FAILURE TO INVESTIGATE
        MUST BE DISMISSED........................................................................... 21

CONCLUSION ........................................................................................................ 24

## ARGUMENT

### A.   PLAINTIFF'S SECOND AMDENDED COMPLAINT MUST BE DISMISSED BECAUSE IT IS AN IMPERMISSIBLE "SHOTGUN PLEADING."

Plaintiff argues that his Second Amended Complaint is not an impermissible

"shotgun pleading." Plaintiff is wrong. The Eleventh Circuit has provided a clear

discussion on the different types of shotgun pleadings, stating:

> Though the groupings cannot be too finely drawn, we have identified four
> rough types or categories of shotgun pleadings. **The most common type—
> by a long shot—is a complaint containing multiple counts where each
> count adopts the allegations of all preceding counts, causing each
> successive count to carry all that came before and the last count to be a
> combination of the entire complaint.** The next most common type, at least
> as far as our published opinions on the subject reflect, is a complaint that
> does not commit the mortal sin of re-alleging all preceding counts but is
> guilty of the venial sin of being replete with conclusory, vague, and
> immaterial facts not obviously connected to any particular cause of
> action. The third type of shotgun pleading is one that commits the sin of not
> separating into a different count each cause of action or claim for
> relief. **Fourth, and finally, there is the relatively rare sin of asserting
> multiple claims against multiple defendants without specifying which of
> the defendants are responsible for which acts or omissions, or which of
> the defendants the claim is brought against.** The unifying characteristic of
> all types of shotgun pleadings is that they fail to one degree or another, and
> in one way or another, to give the defendants adequate notice of the claims
> against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)

(emphasis added) (internal citations removed). The Iowa federal courts have repeatedly

expressed concerns with shotgun pleadings, specifically in case where numerous causes of

action are being brought that have different elements and standards. *See Young v. Wells Fargo & Co.,* 671 F.Supp.2d 1006, 1016 (S.D. Iowa 2009). "Such pernicious complaints 'shift[ ] onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support.'" *Sagez v. Global Agr. Invs., LLC*, No. 11-CV-3059-DEO, 2015 WL 1647921, at *4 (N.D. Iowa Apr. 14, 2015) (quoting *Gurman v. Metro Hous. & Redevelopment Auth.,* 842 F.Supp.2d 1151, 1153 (D. Minn. 2011)). Further, "'[t]hey waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Temple v. Roberts*, 15-CV-5062-JLV, 2018 WL 4120036, at *5 (D. S.D. Aug. 29, 2018) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

Plaintiff's Second Amended Complaint clearly falls into the first and fourth categories described by the Eleventh Circuit (multiple counts adopting all prior allegations), as each claim set forth by Plaintiff contains the same paragraph stating, "Plaintiff incorporates by reference the allegations of the proceeding paragraphs as though set forth at length herein." Doc. 30, at ¶¶ 441, 448, 461, 471, 478, 491. Plaintiff's Second Amended Complaint, as written, makes it incredibly difficult for Defendants to determine the factual allegations supporting each of the claims brought against them. Plaintiff's Second Amended Complaint is 77 pages long, and contains nearly 500 factual allegations.

Plaintiff alleges six different claims[1]—which have very different elements and/or standards from each other—against numerous different Defendants.

Additionally, Plaintiff's Second Amended Complaint also falls under the fourth category, as Plaintiff's claims differ on which Defendants they are being brought against, with some counts being brought against some, but not all, of the Defendants.  The issue with this is that some facts relevant to one claim are not relevant to another claim.  Further, some facts are related to the conduct of some defendants, but not others.  For example, at least 100—if not 200 or more—of the factual allegations contained in the Second Amended Complaint mention only Defendant Ludwick or actions taken only by Defendant Ludwick.[2] However, each of these factual allegations is incorporated into each of the claims against Defendants Kious and Marion County.  It is entirely unclear what effect, if any, these numerous allegations have on the claims raised against Defendants Kious and Marion County.  Likewise, on its face, some of the claims raised by Plaintiff appear to relate solely to the underlying criminal investigation, whereas others appear to relate solely to the underlying civil litigation.  However, once again, each of the claims incorporates factual

---

[1] Plaintiff's Second Amended Complaint made several changes to the causes of actions being alleged by Plaintiff, including the deletion of four causes of action that were previously included in Plaintiff's First Amended Complaint and the inclusion of a new cause of action.  Despite these changes, the factual allegations contained in the Second Amended Complaint remained virtually unchanged from the First Amended Complaint.  Had Plaintiff's Second Amended Complaint been written in a succinct manner aimed only at providing the material allegations needed for each cause of action, one would expect there to be numerous changes to the factual allegations, as the elements and standards for the deleted causes of action differ from the other causes of action included in the Second Amended Complaint.  However, such changes did not occur, leading to serious questions as to what allegations are material to each claim and which are simply unnecessary detail aimed at camouflaging the truly material allegations.

[2] Indeed, as is shown in Section C below (and several other sections), many of the factual allegations Plaintiff relies upon to preclude dismissal of his claims against Defendants Kious and Marion County make no mention of either Defendant.  Rather, the factual allegations pertain only to Defendant Ludwick or actions taken solely by Defendant Ludwick.  It is unclear how Defendants are liable for Defendant Ludwick's actions (Plaintiff provides no explanation), making it virtually impossible for Defendants to be able to respond to such arguments, as Defendants Kious and Marion County do not have personal knowledge of the actions allegedly taken by Defendant Ludwick.

allegations that are unrelated to the underlying criminal investigation or underlying civil litigation.  Again, it is unclear what, if any, effect these factual allegations have on Plaintiff's various claims.

At this point, Plaintiff has filed three different Complaints in this matter.  None of these Complaints has been written in a manner that would allow the Defendants to reasonably understand which of the hundreds of factual allegations pertain to the claims brought against each individual Defendant and which are wholly irrelevant.  Plaintiff and his attorneys have had ample opportunity to provide a clearly written Complaint.  They have chosen not to do so.  The fact that Plaintiff has included so many factual allegations to support his claims against Defendants Kious and Marion County that do not make any mention of Defendants Kious and Marion County will lead to an exponential increase in litigation costs, as Defendants will be required to undergo massive amounts of discovery simply to understand what actions Defendant Ludwick did or did not take so that Defendants Kious and Marion County can properly defend themselves.  Due to Plaintiff's repeated failures to provide a coherent Complaint, the Court must dismiss Plaintiff's Second Amended Complaint.

## B. THE COURT CAN CONSIDER THE EXHIBITS INCLUDED IN DEFENDANTS' PRE-ANSWER MOTION TO DISMISS, REGARDING THE ARREST WARRANT, THE DISTRICT COURT RULING FOLLOWING THE PRELIMINARY HEARING, AND THE JURY VERDICT FORM FROM THE UNDERLYING CRIMINAL TRIAL

Plaintiff argues that the Court cannot consider the exhibits Defendants included in their Renewed Rule 12(b)(6) Pre-Answer Motion to Dismiss and instead, may only consider the exhibits if the Court converts Defendants' Motion into a Motion for Summary

Judgment.[3]  This is not true.  As Defendants' explained in their prior Brief, there is considerable case law from the Eighth Circuit and numerous other jurisdictions showing such exhibits may be considered on a motion to dismiss.  Plaintiff's Resistance does not dispute this case law in any way, and instead, seems to suggest that the Court can never consider materials outside the four corners of a complaint on a motion to dismiss.

Case law from the Eighth Circuit completely contradicts Plaintiff's position.  *E.g.*, *Enervations, Inc. v. Minnesota Mining & Mfg., Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (courts may consider materials outside the complaint itself on a motion to dismiss, without converting the motion into one for summary judgment, if the materials relied upon are "necessarily embraced by the complaint."); *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (stating courts may consider "some materials that are part of the public record or do not contradict the complaint…" on a motion to dismiss).  Here, the exhibits Defendants have introduced to this Court fall into the scope of information that may be considered on a motion to dismiss.  *See id.*; *see also* Doc. 31-1, pp. 5-7.[4]

## C.   PLAINTIFF'S COUNT I ALLEGING A VIOLATION 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST MUST BE DISMISSED.[5]

---

[3] Plaintiff also attempts to ask the Court to consider a March 21, 2018 email and a February 25, 2019 Ruling from the Iowa District Court for Marshall County (Exhibits 1 and 2).  None of these materials were contained in Plaintiff's Second Amended Complaint, and Plaintiff provides no legal rationale explaining why the Court can take them into consideration on a Motion to Dismiss.

[4] Plaintiff's Resistance only discusses the arrest warrant—it makes no mention of the Ruling following the Preliminary Hearing or the Jury Verdict Form.  As such, Plaintiff's Resistance is not in reference to these two exhibits, indicating that Plaintiff does not object to their consideration.

[5] Plaintiff states in his footnote 7 that Defendants did not file any exhibits referenced in this Renewed Motion to Dismiss.  The Exhibits were attached to the end of Defendants' Brief.

Plaintiff contends that there was not probable cause to support his arrest for the murder of Shirley Carter. Plaintiff spends considerable energy attempting to discredit each of the facts listed on the affidavit filed in connection with the application for the arrest warrant to argue that no probable cause existed to support the arrest. However, when the other findings of probable cause by the district court are considered—the district court's December 22, 2017 Order Following Preliminary Hearing and when the district court, at the conclusion of presentation of both parties' cases during the criminal trial, allowed the case to go to the jury—it is clear that Plaintiff's argument is meritless.

Eighth Circuit case law is clear that the finding of probable cause on three different occasions—one of which occurred at the end of the criminal trial—defeats Plaintiff's false arrest claim, as there can be no "false arrest" if probable cause existed. *Rose v. City of Mulberry*, 533 F.3d 678, 680 (8th Cir. 2008); *Anderson v. Larson*, 327 F.3d 762, 770 (8th Cir. 2003); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Plaintiff attempts to discredit these findings by arguing that the facts supporting the arrest warrant were not legitimate and arguing that Defendants did not follow-up on tips until shortly before trial or in one instance, during trial. There are several issues with these arguments.

First, Plaintiff provides no case law supporting his assertion that the three findings of probable cause can be ignored because leads were not investigated until shortly before trial. Indeed, Plaintiff has failed to point to a single case that is similar to the facts alleged here. Second, Plaintiff's attempts to discredit the finding of probable cause at trial by submitting the case to the jury is unavailing, as Plaintiff's own arguments show that the alleged exculpatory evidence—except for one instance—was investigated prior to trial.

Indeed, the exculpatory evidence Plaintiff alleges Defendants failed to investigate was received by Plaintiff prior to his criminal trial.  *See* Doc. 39-1, pp. 15–16.  Thus, while Plaintiff attempts to argue that the fact that case went to the jury "means nothing," that is simply false as the trial court, despite being made aware of the exculpatory evidence Plaintiff attempts to rely upon here, determined there was sufficient probable cause to allow for the jury to decide whether Plaintiff was guilty.  *See U.S. v. Thompson*, 493 F.3d 359, 363 (8th Cir. 1974) (recognizing that standard for submitting case to jury to decide is whether there is sufficient evidence to support a finding of conviction).  Finally, while Plaintiff cites to numerous allegations in his Second Amended Complaint to support his claim against Defendant Kious, this argument is misplaced, as the vast majority of factual allegations Plaintiff points to relate solely to actions taken by Defendant Ludwick—Defendant Kious is not mentioned whatsoever.  *See* Doc. 30, ¶¶ 85–95; 180–192; 204; 210; 223–228; 236–246; 363–364; 397–400; 406–415; 421 (referring only Defendant Ludwick).[6]  It is not at all clear how Defendant Kious is liable for the alleged actions of Defendant Ludwick.

Accordingly, this claim must be dismissed.

**D.   PLAINTIFF'S COUNT II ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION FOR ALLEGED CONCEALING OF EVIDENCE MUST BE DISMISSED.**

Plaintiff argues that it was a due process violation under 42 U.S.C. § 1983 for Defendant Kious to provide inculpatory evidence to the Civil Plaintiffs in the underlying

---

[6] Plaintiff's citations to specific factual allegations in his Second Amended Complaint appear to be inaccurate.  The references cited by Defendants here are to the factual allegations Defendants believe Plaintiff was attempting to cite to.

civil action but not to turn over exculpatory evidence to Mr. Carter.  In other words, Plaintiff appears to argue that by providing some information to the Civil Plaintiffs, Kious was bound by the Constitution to provide alleged exculpatory evidence to Mr. Carter.  In support of this argument, Plaintiff does not cite to a single case, but rather, provides only his own self-serving conclusions.  However, as explained in the Brief in Support of the Pre-Answer Motion to Dismiss, no subpoena was ever served on Defendant Kious or Marion County to provide information to Mr. Carter in the underlying civil action, nor was there any requirement under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) to provide information to Plaintiff.  The case law showing this was clearly highlighted in Defendants' prior Brief.  Notably, Plaintiff makes no effort to argue that Defendants' explanation of the case law was wrong.  Plaintiff's argument under this claim in regards to Kious is wholly lacking both in fact and in law.  This claim must be dismissed.

**E.   PLAINTIFF'S COUNT III ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR MONELL LIABILITY MUST BE DISMISSED.**

Plaintiff argues in his Resistance that the *Monell* liability claim cannot be dismissed against the County, because the actions of Defendant Kious during the investigation were so pervasive to indicate a policy or custom on behalf of the County and because the County allegedly provided Kious inadequate training.  Neither argument has merit and this claim must be dismissed.

First, Defendant Kious did not engage in any unlawful conduct, and therefore, there can be no *Monell* liability attached to the County.  Second, it is well-established that *Monell* liability cannot be imposed upon a single incident, unless taken by the highest officials

responsible for creating policy.  *E.g.*, *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007).   Likewise, it is also established that *Monell* liability cannot be established from the actions of a single employee, as this would turn *Monell* liability into a strict liability claim.  *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 833 (1985) ("the scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make city policy.") (Brennan, J., concurring); *Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 682 F.Supp. 451, 457 (E.D. Mo. 1988) ("To hold a governmental entity liable on the basis of a policy inferred from the "isolated misconduct of a single, low-level' employee would amount to imposing liability on the theory of "strict respondeat superior' which was 'rejected in *Monell.*'"); *Osborne v. Hawkins*, No. 1:05CV00018 JLH/BD, 2007 WL 1540234, at *6 (E.D. Ark. May 24, 2007) ("[A] municipality cannot be held liable solely because it employs a tortfeasor-or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  "[T]he scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful action of a single city employee not authorized to make city policy.") (internal citations removed). Plaintiff provides no case law showing that the alleged actions of a single, non-policymaking employee, in a single instance, can impose *Monell* liability upon the employee's employer.

Third, and in an effort to get around this defect in his claim, Plaintiff attempts to argue that the County did not properly train Defendant Kious before assigning Kious to Shirley Carter's murder investigation.  In order to support this theory, Plaintiff grossly

misstates Defendant Kious's prior deposition testimony in an effort to claim that the training Kious received regarding detective work was from Kious watching television shows, stating, "Defendant Kious acknowledged that the training he received on how to be a detective came from what he had seen on television."  Doc. 39-1, p. 23.

However, a review of the deposition testimony this quote is taken from, attached hereto as Exhibit D, shows Plaintiff is completely misrepresenting Kious's testimony.[7]  The deposition transcript that this alleged "quote" was taken from, states, in relevant part:

> Q. During the early parts of the investigation, were there times where you and Agent Ludwick disagreed about what next steps should be?
>
> A. Yes.
>
> Q. What were those disagreements?
>
> A. Mainly on follow-up.  **In August of 2015 my perception of what a detective was was kind of what I've seen other people do or on TV**.  Me back from August 2015 to me now, I do things a lot differently, and this case is a large part of that just due to the complexity and the number of moving pieces.

Ex. D (emphasis added).   As this statement shows, Kious in no way stated that the "training" he received was from watching television; rather, all he garnered from television at that point in his career was **his perception** of what detectives did.  *Id*.  This is hardly surprising considering Kious was a new detective at that time.  In fact, this statement makes

---

[7] The Court can consider this Exhibit on a Motion to Dismiss.  As explained above, the Court can consider items outside the four corners of the Complaint, if the item is "necessarily embraced" by the Complaint.  *Enervations*, 380 F.3d at 1066 (8th Cir. 2004).  Here, the deposition is "necessarily embraced" because Plaintiff is making direct reference to the contents of the testimony from that deposition.  *See Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (finding it appropriate to consider agreements that were contemplated by or expressly mentioned in the complaint).

no mention at all of any training the County provided to Kious.  Accordingly, Plaintiff's

argument is based on a gross misrepresentation of Kious's prior deposition testimony, and

must be rejected.[8]

As such, Plaintiff has not identified any grounds that would justify precluding

dismissal on this claim.  This claim must be dismissed.

## F.   PLAINTIFF'S ARGUMENTS THAT HIS CONSPIRACY CLAIM IN VIOLATION OF 42 U.S.C. § 1983 MUST BE REJECTED BECAUSE PLAINTIFF DID NOT INCLUDE SUCH A CLAIM IN HIS SECOND AMENDED COMPLAINT.

Plaintiff argues that his claim for conspiracy in violation of 42 U.S.C. § 1983 is a

proper claim.  However, Plaintiff's Second Amended Complaint does not contain such a

claim.  *See* Doc. 30.  Indeed, this claim was previously included in Plaintiff's First

Amended Complaint, however, Plaintiff chose to abandon this claim.  *Compare* Doc. 8

*with* Doc. 30.  These arguments should be disregarded.

## G.   PLAINTIFF'S COUNT IV ALLEGING MALICIOUS PROSECUTION MUST BE DISMISSED.

Plaintiff contends he can satisfy both the want of probable cause and malice

elements needed to bring a malicious prosecution claim.  In regards to the probable cause

argument, Plaintiff simply repeats the arguments he raised in his Count I for False Arrest.

As was explained in Section C above, this argument is meritless and is insufficient to avoid

dismissal.

---

[8] Plaintiff also asks the Court to consider an alleged March 21, 2018 email.  Despite being allegedly "highly relevant," Plaintiff has not felt it necessary to include this email in his original Complaint, First Amended Complaint, or Second Amended Complaint.  Plaintiff identifies no legal basis that would permit the Court to consider facts Plaintiff himself failed to include in his Complaints.  This request must be rejected.

In regards to malice element, as Plaintiff pointed out in his Resistance, ordinarily malice can be shown by actual malice, or can be inferred by a want of probable cause.  Doc. 39-1, p. 28 (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 260 (Iowa 1990)).   However, Plaintiff failed to note that the ability to infer malice does not apply to all defendants. Indeed, the Iowa courts has made clear that when a plaintiff brings a claim for malicious prosecution against defendants who are public officials—which includes law enforcement officers acting in their official capacity—malice can only be shown through the actual malice standard.  *Yoch v. City of Cedar Rapids*, 353 N.W.2d 95, 102-03 (Iowa Ct. App. 1984).   For malicious prosecution claims brought against law enforcement officers like Defendant Kious, malice cannot be inferred from want of probable cause.  *Id.* at 102.  Under this standard, Plaintiff must show that Defendant Kious's instigation of criminal proceedings against Plaintiff was "primarily inspired by ill-will, hatred, or wrongful motive."  *Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975).  "If the defendant's purpose in instigating proceedings was otherwise proper, the fact he felt indignation or resentment toward the plaintiff will not subject him to liability."  *Id.*

Here, Plaintiff has no evidence whatsoever to suggest that Defendant Kious instigated criminal proceedings against Plaintiff due to "ill-will, hatred, or wrongful motive."  *Id.*  Instead, Plaintiff's argument is entirely based upon the Court inferring malice due to alleged defects in the criminal investigation of Shirley Carter's murder.  *See* Doc. 39-1, pp. 28-32.  However, this standard does not apply to Defendant Kious.  Accordingly, this claim must be dismissed.

**H.     PLAINTIFF'S COUNT V ALLEGING ABUSE OF PROCESS MUST BE DISMISSED.**

Plaintiff argues that his abuse of process claim against Kious was not based upon the underlying criminal action; but rather, was based upon the underlying civil action.  At the outset, Plaintiff has failed to provide the applicable standard for abuse of process to individuals who were not parties to the underlying case.  The law is clear that in order to bring a claim for abuse of process against a non-party to the underlying action, the plaintiff must show the non-party "actively participated" in the underlying action.  CJS Process, § 154.  As that section makes clear, "[i]n order to constitute active participation in litigation, for purposes of the tort of malicious abuse of process, more is required than encouragement, advice, or consultation." *Id*.  Plaintiff alleges that Kious "abused" the civil action—to which he was not a party—by using the civil action to "violate" Plaintiff's constitutional rights in an effort to obtain statements and evidence against him that Kious otherwise could not have obtained from him; that Kious tried to "shore up" the criminal investigation in order to maintain the civil judgment against Plaintiff; and that Kious "conspired" with the Civil Plaintiffs by working with them in the civil action.  None of these arguments have merit.  More fundamentally, the allegations put forth by Plaintiff do not comport with the purpose that claims for abuse of process exist for.

Kious will address each claim in turn.

1.     Plaintiff's Arguments in Support of His Abuse of Process Claim Fail to Plead an Actionable Claim.

Plaintiff's abuse of process claim has a fundamental error to it: Kious's actions—even accepted as true—do not satisfy the "improper purpose" element.  Indeed, this is one

of the fundamental elements Plaintiff must show.  *See e.g.*, *Palmer v. Tandem Mgmt. Srvs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993).   Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself.  *Id.*  This amounts to "a form of extortion in which a lawfully used process is perverted to an unlawful use." *Id.*  "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended." *Schmidt v. Wilkinson*, 340 N.W.2d 282, 284 (Iowa 1983).  Courts interpreting this provision have stated that a typical abuse of process case is one in which a party— which is entitled to a certain amount of rent from another party—files a civil lawsuit against the other party in an effort to "coerce" the other party into agreeing to paying a higher rent. *See e.g.*, *id*. ("The usual case of abuse of process is one of *some form of extortion,* using the process *to put pressure upon the other to compel him* to pay a different debt or *to take some other action* or refrain from it.") (emphasis in original); *Sage Intern., Ltd. v. Cadillac Gage, Co.*, 556 F.Supp. 381, 389 (E.D. Mich. 1982) (same).   In other words, the abuse of process claim is aimed at conduct involving the use of a legal process when the party initiating the process is not interested in obtaining the relief provided by the proceeding. *See id*.   Indeed, this is consistent with the Restatement (Second) of Torts, § 682, which provides:

> One who uses a legal process, whether criminal or civil, against another **primarily** to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

(emphasis added).  The comments of this section provide helpful guidance:

> *b. "Primarily."* The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm; nor does the instigation of justified bankruptcy proceedings become abuse of process merely because the instigator hopes to derive benefit from the closing down of the business of a competitor.

Restatement (Second) of Torts, § 682, cmt. b.

Plaintiff's argument is that Kious "abused" the civil proceedings by using the proceeding to obtain a judgment against Plaintiff, that would then allow law enforcement to charge Plaintiff with the murder of his mother.  Doc. 39-1, p. 36 ("Kious used the civil process to accomplish a purpose for which it was not designed—to manipulate the trial into a civil liability finding which could then be leveraged into criminal charges.").  In other words, Plaintiff is arguing that the civil action was pursued in order to obtain a judgment against him—which is exactly what the purpose of the civil proceedings are for.  As such, from Plaintiff's own argument, the primary purpose for initiating the civil action was to obtain a judgment against Plaintiff.  *See id*.  As such, it does not matter that Plaintiff alleges Kious may have had an ulterior or wrongful motive for assisting in the proceeding.  *See* Restatement (Second) of Torts, § 682, cmt. b.  Rather, all that matters is that the main purpose of the civil proceeding was for the purpose the proceeding existed for: to obtain a monetary judgment against another party.  *Id*.  Plaintiff's claim fails as a matter of law.

 2.   <u>Plaintiff's Claim that Kious Abused the Underlying Civil Action in an Effort to Obtain Additional Statements and Evidence Fails to Support a Cause of Action for Abuse of Process.</u>

Even if the Court chose not to dismiss Plaintiff's abuse of process claim for the reason expressed immediately above, dismissal is still warranted. In support of this ground for liability, Plaintiff alleges Kious abused the underlying action by "providing questions" to counsel in the civil action to ask Plaintiff and by waiting until after the civil trial had occurred and using statements from the that trial to charge Mr. Carter with murder. Doc. 39-1, p. 34. Of particular note, Plaintiff has not cited a single case showing that these grounds have ever been used to support a finding of abuse of process. Regardless, Kious will address each separate subclaim.

First, in regards to Kious providing questions, there is nothing in the Second Amended Complaint to support this claim. In support of its position, Plaintiff states:

> When asked if Kious ever directed the Civil Plaintiffs' counsel to ask Plaintiff specific questions in Plaintiff's deposition, **Kious stated he '[didn't] remember anything specific**, but [he] very well could have.

*Id*. (emphasis added). From this statement of having no recollection, Plaintiff somehow deduces that Kious did in fact do the thing he had no recollection of doing, stating, "Kious was not entitled to question Plaintiff under oath at the time he provided questions to the Civil Plaintiffs to ask Plaintiff under oath in the Civil Lawsuit." *Id*. This is a gross misstatement of the alleged deposition testimony and must be rejected.

Second, in regards to waiting until after the civil trial concluded and using statements and evidence from that trial, Plaintiff's position contradicts basic, black-letter law regarding law enforcement's ability to collect and use evidence and ignores the fact that trials are open to the public and a matter of public record. Even accepting Plaintiff's contention that police could not otherwise obtain the statements and evidence allegedly

used prior to the trial, the fact remains that law enforcement could use this evidence because it was introduced into a public record at a trial that was open to the public. *Walter v. U.S.*, 447 U.S. 649, 656 (1980) (holding it is not unlawful for police to use evidence obtained through lawful means). Plaintiff provides no case law showing that it is unlawful for law enforcement to use evidence that is revealed in a public trial, nor could he. It is axiomatic that law enforcement can use statements and evidence that are publicly available.

Accordingly, all Plaintiff's Second Amended Complaint shows is that Kious has no recollection of requesting the Civil Plaintiffs ask Mr. Carter certain questions and that Kious may have relied upon publicly available statements and evidence. This ground fails as a matter of law and does not support a showing that Defendant Kious "abused" the civil case to which he was not a party.

> 3. <u>Plaintiff's Claim that Kious Abused the Underlying Civil Action by Allegedly Trying to "Shore Up" the Investigation to Maintain the Civil Judgment Fails to Support a Cause of Action for Abuse of Process.</u>

Plaintiff's second ground is entirely puzzling, as it is directed at actions taken in furtherance of the criminal investigation and is wholly separate from any action taken during the course of the underlying civil action. Plaintiff provides no legal support for his incredibly broad claim that actions taken outside the scope of the legal proceeding underlying an abuse of process claim can give rise to such a claim. Nor could Plaintiff, as the case law makes clear that in order to establish such a claim, there must be the use of a legal process. *Iowa Supreme Ct. Attny. Disciplinary Bd. v. Barnhill*, 885 N.W.2d 408, 419 (Iowa 2016) (stating that "**<u>use of a legal process</u>**" is a necessary element to an abuse of process claim). It is entirely unclear how actions taken in furtherance of a criminal

investigation could constitute an abuse of a civil lawsuit.  Plaintiff's Resistance provides no case law to help explain this issue.

Further, the only citation Plaintiff makes in support of this argument is to paragraph 295 of the Second Amended Complaint, which alleges that Charity Roush was interviewed by Kious on November 13, 2018 and that Ms. Roush provided alleged exculpatory evidence.  Sec. Am. Complaint, ¶ 295.  From this, Plaintiff attempts to extrapolate that Defendant Kious did this in an effort to be able to say "he followed up on leads" so that the verdict in the civil action would not be overturned.  Doc. 39-1, p. 35.  However, there is nothing in the Complaint that alleges that this was Kious's motive for interviewing Ms. Roush (or that Kious had any specific motive for interviewing Ms. Roush).  Rather, Plaintiff's argument is pure conjecture, wholly unsupported by any allegations in his Second Amended Complaint.

This ground fails as a matter of law.

4.   <u>Plaintiff's Claim that Defendant Kious "Conspired" with the Civil Plaintiffs in the Underlying Civil Action Fails to Support a Cause of Action for Abuse of Process.</u>

Finally, Plaintiff alleges that Defendant Kious abused the underlying civil action by "conspiring" with the Civil Plaintiffs.  Plaintiff attempts to support this argument by citing to portions of the Second Amended Complaint which alleges: 1) that Kious received information from the girlfriend of Billy Carter (Plaintiff's father); 2) that Kious met with Civil Plaintiffs' counsel prior to charges being filed against Plaintiff; and 3) that Kious agreed to provide certain criminal investigation information to Civil Plaintiffs in exchange

for a conversation with the Civil Plaintiffs.  Once again, Plaintiff has not cited any case law showing that any of these grounds can support an abuse of process claim.

Further, Plaintiff's allegations show only that Kious agreed to cooperate with the Civil Plaintiffs.  However, as explained above, in order to show Kious "actively participated" in the civil action, "more is required than encouragement, advice, or consultation."  CJS Process, § 154.  Plaintiff's allegations only show that, at most, Kious provided advice and consultation to the Civil Plaintiffs.  This ground fails as a matter of law.

Accordingly, Plaintiff has failed to articulate any basis to support a claim for abuse of process against Kious.  This claim must be dismissed.

**I.    PLAINTIFF'S COUNT VI ALLEGING DUE PROCESS VIOLATION BROUGHT UNDER 42 U.S.C. § 1983 FOR FAILURE TO INVESTIGATE MUST BE DISMISSED.**

Plaintiff asserts that his claim for due process violation for an alleged failure to investigate should not be dismissed.  Specifically, Plaintiff argues that the Second Amended Complaint shows Kious purposefully ignored evidence showing Plaintiff's innocence and that Kious employed systematic pressure to implicate Plaintiff.  Doc. 39-1, pp. 37-42.  Plaintiff's arguments fail in several respects.

First, Plaintiff ignores the fact that law enforcement officers are not required to undertake every single possible effort to exonerate a suspect.  *Baker v. McCollan*, 443 U.S. 137, 145 (1979).  In addition, law enforcement officers cannot be held liable for not believing certain witnesses or discounting evidence that does not fit with the other evidence in the case.  *Winslow v. Smith*, 696 F.3d 716, 734 (8th Cir. 2012).  Plaintiff's arguments

are inconsistent with this clearly-established law, because Defendant Kious cannot be held liable for not believing every witness who provided information and for not following up on every single lead.[9] Indeed, Plaintiff's own words indicate that dismissal of this claim is necessary, stating, "what [the Second Amended Complaint] does allege is that Kious disregarded myriad leads and viable exculpatory evidence because it did not fit Kious's theory of the crime." Doc. 39-1, p. 38. The law explained above clearly indicates law enforcement officers cannot be held liable for such conduct. *Baker*, 443 U.S. at 145; *Winslow*, 696 F.3d at 734.

Second, the case law analyzing the failure to investigate does not support Plaintiff's position. The Eighth Circuit has made clear that failing to follow-up on leads or ignored conflicting evidence does not support a finding of a due process violation. *Johnson v. Moody*, 903 F.3d 766, 773 (8th Cir. 2018) ("Evidence that investigators ignored factual inconsistencies in the evidence, negligently failed to look into leads, and did not question the alleged victim's credibility is insufficient to establish that they investigated in a reckless, conscience-shocking manner."); *Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007) (in case where plaintiff had murder conviction and death sentence overturned, finding no constitutional violation for failure to investigate when officer failed to

---

[9] The need for this discretion is clearly illustrated by Plaintiff's Second Amended Complaint. While Plaintiff continuously harps on the leads and exculpatory evidence that was not followed up on, a close review of the paragraphs cited to by Plaintiff shows that the "leads" and "exculpatory evidence" were wildly contradictory in nature. Indeed, Plaintiff's Second Amended Complaint states that tips were received that each of the following individuals were connected in some way to Shirley Carter's murder: Joel Followill, John Followill, Joseph Sedlock, Matt Kamerick, Callie Shinn, Michelle Dnaiels, Jason Beaman, Jeremiah Larid, Amber Shinn, Chris Brees, Kory Ford, Nichole Sedlock, Rory Pearson, Sue Dabb, Jim Dabb, Bill Carter, and Jason Carter. As this clearly shows, law enforcement was provided with numerous tips that pointed in numerous different directions. In such cases, law enforcement should not be compelled to follow-up on leads that do not fit the evidence obtained. Such a requirement would place an enormous burden on law enforcement and result in the waste of precious resources.

investigate another suspect named by an eyewitness shortly after the murder occurred);
*Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009) (in noting that officers did not engage
in any improper means of attempting to generate evidence against plaintiff, finding
plaintiff's claim for failure to investigate failed in case where officers' investigation
resulted in flawed evidence and where officers negligently failed to investigate leads and
inconsistencies in the evidence).  Indeed, the cases in which the federal courts have refused
to dispose of due process claims for failure to investigate involve cases in which law
enforcement engaged in overt, wrongful conduct to manufacture evidence or when law
enforcement had no reasonable basis to believe or rely upon the evidence pointing towards
the plaintiff's guilt.  *See Winslow*, 696 F.3d at 734 (reversing grant of summary judgment
on failure to investigate claim because officers began coaching witnesses to provide false
testimony to convict plaintiff); *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 957 (8th Cir. 2001)
(affirming denial of summary judgment on failure to investigate claim when officers failed
to investigate other leads despite only evidence being a confession from plaintiff—who
had limited intelligence and mental capacities—that officers had knowingly obtained
through coercive interrogation methods); *Furgison v. Short*, 2:14-cv-04062-NKL, 2015
WL 4877539, at *29 (W.D. Mo. Aug. 14, 2015) (denying summary judgment on failure to
investigate claim when officers coached witness into providing false testimony in effort to
convict plaintiff).

  Here, Plaintiff's Second Amended Complaint shows only that Defendant Kious
failed to look into leads or failed to uncover all possible exculpatory information.  At most,
these facts indicate negligence on the part of Defendant Kious.  However, that is

insufficient to impose liability for a due process violation. *Johnson*, 903 F.3d at 773 ("negligent failure to investigate inconsistencies or other leads" is not "conscience-shocking misconduct."). Plaintiff has no evidence and makes no factual allegations that suggest Defendant Kious engaged in conduct similar to those where failure to investigate claims were not disposed of, such as pressuring witnesses to provide false testimony.

This claim must be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff has failed to articulate any basis on any of the claims alleged that is sufficient to prevent dismissal. The Defendants, Marion County, Iowa and Reed Kious, Marion County Deputy Sheriff in his individual capacity, respectfully request the Court dismiss Plaintiff's Second Amended Complaint in its entirety.

BRADSHAW, FOWLER, PROCTOR & FAIRGRAVE, P.C.


By:   */s/ Jason C. Palmer*
      Jason C. Palmer  AT0006089
      801 Grand Avenue, Suite 3700
      Des Moines, IA  50309-2727
      Phone:  (515) 243-4191
      Fax:  (515) 246-5808
      E-Mail:  palmer.jason@bradshawlaw.com

      ATTORNEY FOR MARION COUNTY, IOWA;
      REED KIOUS, Marion County Deputy Sheriff in his
      individual capacity;

Original filed.

Copy to:

Glen S. Downey
**LAW OFFICES OF GLEN S. DOWNEY**
5214 Ingersoll Avenue
Des Moines, IA 50312
Tel: (412) 865-7110
Fax: (515) 259-7599
glen@downey-law.net

Christine E. Branstad
**BRANSTAD & OLSON LAW OFFICES**
2501 Grand Ave. Suite A
Des Moines, IA 50312
Telephone: (515) 224-9595
Facsimile: (515) 281-1474
Email: Branstad@BranstadLaw.com

Alison F. Kanne
**WANDRO & ASSOCIATES, P.C.**
2501 Grand Ave. Suite B
Des Moines, IA 50312
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
Email: akanne@2501grand.com

ATTORNEYS FOR PLAINTIFF

Mark E. Weinhardt
David N. Fautsch
**THE WEINHARDT LAW FIRM**
2600 Grand Avenue, Suite 450
Des Moines, IA 50312
Telephone: (515) 244-3100
E-mail: mweinhardt@weinhardtlaw.com
          dfautsch@weinhardtlaw.com


ATTORNEYS FOR DEFENDANT BILL GENE CARTER


Jeffrey C. Peterzalek
Tessa Register
**OFFICE OF THE ATTORNEY GENERAL OF IOWA**
1305 E. Walnut Street
Des Moines, IA 50309
Telephone: (515) 281-5164
E-mail: jeffrey.peterzalek@ag.iowa.gov
          Tessa.Register@ag.iowa.gov


ATTORNEYS FOR DEFENDANT MARK LUDWICK

<div style="border:1px solid black; padding:10px;">

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 30 of July , 2020 by:

☐ U.S. Mail                    ☐ FAX
☐ Hand Delivered               ☐ UPS
☐ Federal Express              ☒ Other EFILE

   /s/ Linda Righi

</div>

# EXHIBIT D

---

**[Page 1]**

```
09:01:26  1      IN THE IOWA DISTRICT COURT FOR MARION COUNTY
          2   STATE OF IOWA,            )
          3              Plaintiff,     )  FECR029316
                                        )
          4   vs.                       )  VIDEOTAPED
          5   JASON CARTER,             )  DEPOSITION OF
          6              Defendant.     )  REED KIOUS
          7   _____  )  VOLUME I
          8          THE VIDEOTAPED DEPOSITION OF
          9   REED KIOUS, VOLUME I, taken before
         10   Gale Sweeney Christensen, Certified Shorthand
         11   Reporter, Registered Professional Reporter,
         12   and Notary Public of the State of Iowa,
         13   commencing at 9:36 a.m., July 24, 2018, at
         14   211 North Godfrey Lane, Knoxville, Iowa.
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24      Reported by:  Gale Sweeney Christensen,
                               CSR, RPR
         25
```

SWEENEY COURT REPORTING (515) 244-6373
320 Insurance Exchange Bldg., Des Moines, IA 50309

---

**2**

```
 1                  A P P E A R A N C E S
 2   Plaintiff by:   ED BULL
                     Madison County Attorney
 3                   MATHIAS ROBINSON
                     Assistant Madison County Atty.
 4                   214 East Main Street
                     Knoxville, Iowa 50138
 5
     Defendant by:   CHRISTINE E. BRANSTAD
 6                   Attorney at Law
                     Branstad & Olson Law Office
 7                   2501 Grand Avenue
                     Des Moines, Iowa 50309
 8                   branstad@branstadlaw.com
 9                   ALISON KANNE
                     Attorney at Law
10                   Wandro & Associates
                     2501 Grand Avenue
11                   Des Moines, Iowa 50312
                     akanne@2501grand.com
12
                         and
13
                     WARD A. "SAM" ROUSE
14                   Attorney at Law
                     Rouse Law P.C.
15                   4940 Pleasant Street
                     West Des Moines, Iowa 50266
16                   wardrouse@rouselaw.us
17   Also present:   Jason Carter
                     Bart Howard, videographer
18
19
20
21
22
23
24
25
```

SWEENEY COURT REPORTING (515) 244-6373
320 Insurance Exchange Bldg., Des Moines, IA 50309

---

**3**

```
 1              INDEX OF EXAMINATION
 2   Examination by              Page
 3   Ms. Branstad                 4
 4
 5           INDEX OF ATTORNEY REQUESTS
 6   Request by          Page    Line
 7   Ms. Branstad         6       25
 8   Ms. Branstad        54       19
 9   Ms. Branstad        69       12
10   Ms. Branstad        81        6
11
12
13              INDEX OF EXHIBITS
14   Exhibits   Referred to on page
15   3          173
16   4          173
17
18
19
20
21
22
23
24
25
```

SWEENEY COURT REPORTING (515) 244-6373
320 Insurance Exchange Bldg., Des Moines, IA 50309

---

**4**

```
             1              P R O C E E D I N G S
             2        THE VIDEOGRAPHER:  On the record.
             3                    REED KIOUS,
             4   called as a witness, having been first duly
             5   sworn, testified as follows:
             6              DIRECT EXAMINATION
09:36:51     7   BY MS. BRANSTAD:
09:36:51     8   Q.  Please state and spell your name for the
09:36:54     9   record.
09:36:54    10   A.  Reed Kious, R-e-e-d, K-i-o-u-s.
09:36:59    11   Q.  As you know, we are here in the matter
09:37:02    12   of State versus Jason Carter.  What is your
09:37:05    13   occupation?
09:37:05    14   A.  I'm a deputy sheriff here at the
09:37:07    15   sheriff's office in Marion County, and I am
09:37:10    16   assigned to be a detective.
09:37:11    17   Q.  Have you had your deposition taken
09:37:13    18   before?
09:37:13    19   A.  Yes.
09:37:14    20   Q.  How many times do you think you've had
09:37:16    21   your deposition taken before?
09:37:17    22   A.  Approximately ten.
09:37:18    23   Q.  So I won't go through any of the
09:37:21    24   reminders for deposition except this.  If you
09:37:24    25   think of anything that you have omitted or
```

SWEENEY COURT REPORTING (515) 244-6373
320 Insurance Exchange Bldg., Des Moines, IA 50309

---

41

10:27:42 1   That's all I know.  Thank you.  D8 is
10:27:44 2   Dilaudid, and the car that Charity Rousch
10:27:47 3   has.  I believe she acquired it in 2016, and
10:27:49 4   it's a white car.  And I know what car it is.
10:27:53 5   I just can't think of what it is off the top
10:27:55 6   of my head.
10:27:56 7        Q. Okay.  So that was the tip.  What was
10:28:00 8   your conversation after the tip?
10:28:02 9        A. I talked to them via phone.  They again
10:28:06 10  stated this information was from talking in
10:28:08 11  the group.  I asked who told them the
10:28:10 12  information.  They stated they had heard this
10:28:12 13  information from Christine McCombs
10:28:13 14  approximately one year ago, in 2017.  And
10:28:15 15  Kristine told her she was shocked to learn
10:28:17 16  about it, as she used to date Joel.
10:28:19 17       The source also stated they heard
10:28:21 18  this information from Jason Beaman
10:28:23 19  approximately one year ago as well and that
10:28:25 20  he told them no specifics and that it was the
10:28:27 21  same story.  The source stated they read
10:28:29 22  about Jason Carter getting accused and wanted
10:28:32 23  to contact law enforcement with the
10:28:34 24  information.
10:28:34 25       Q. Did you ask if -- who else might know

42

10:28:41 1   about it or get any other information from
10:28:41 2   Kaitlin Ford?
10:28:45 3        A. I don't believe so, as I don't have it
10:28:48 4   written down.  And I may have a recording of
10:28:56 5   this.  Again, I have to look at that case
10:28:58 6   file.
10:28:59 7        Q. You then list four different interviews
10:29:07 8   with Bill Carter.  Were those all of the
10:29:09 9   times that you spoke with Bill Carter?
10:29:13 10       A. No, they were not.
10:29:15 11       Q. How many times do you think you've
10:29:12 12  spoken with Bill Carter?
10:29:13 13       A. Probably around ten times in person.
10:29:26 14       Q. How many times on the phone?
10:29:28 15       A. Maybe half as many.
10:29:50 16       Q. Did you ever hear Mark Ludwick tell Bill
10:29:50 17  Carter that he was sure that Jason Carter was
10:29:54 18  the one who shot Shirley Carter?
10:29:59 19       A. I can't recall those specific words, but
10:30:06 20  that was no secret that Mark believed that
10:30:06 21  Jason killed his mother and that Bill would
10:30:10 22  have known that based on talking with Mark.
10:30:13 23       Q. Did Mark Ludwick tell Bill Carter that
10:30:15 24  early in the investigation?
10:30:21 25       A. I don't know.  I wasn't really involved

43

10:30:23 1   with this case early in the investigation
10:30:25 2   other than the day of the homicide and maybe
10:30:27 3   a day or two after.  And when I was involved,
10:30:30 4   it was as a road deputy.
10:30:33 5        Q. When did you really become involved in
10:30:36 6   this case?
10:30:36 7        A. August of 2015 is what I would say.  I
10:30:45 8   did do things on June 19th, though.  I went
10:30:47 9   to Jason Carter's home.  I went with them to
10:30:51 10  get the grain tickets both out of Bill and
10:30:53 11  Jason's truck.  And it wasn't just me.  There
10:30:56 12  were other law enforcement officers there as
10:30:58 13  well.  And then other than that, I just
10:31:02 14  stayed at Pleasantville City Hall and did
10:31:05 15  what I was told.
10:31:06 16       Q. Let's talk a little bit about your
10:31:08 17  interaction with Agent Ludwick with regard to
10:31:11 18  this case.  First, what did Agent Ludwick
10:31:14 19  tell you about having his deposition taken?
10:31:17 20       A. That you were personable with him and
10:31:22 21  that I shouldn't smirk or seem snarky and
10:31:30 22  just tell the truth.
10:31:32 23       Q. Did he tell you anything about what
10:31:34 24  happened in his deposition or what was asked?
10:31:36 25       A. I think there was some brief discussion

44

10:31:38 1   about it but nothing really specifically
10:31:40 2   about what was asked.  If there was I can't
10:31:43 3   really recall the conversation.  It wasn't
10:31:45 4   notable to me.
10:31:46 5        Q. During the early parts of the
10:31:51 6   investigation, were there times where you and
10:31:54 7   Agent Ludwick disagreed about what next steps
10:31:59 8   should be?
10:31:59 9        A. Yes.
10:32:00 10       Q. What were those disagreements?
10:32:02 11       A. Mainly on follow-up.  In August of 2015
10:32:13 12  my perception of what a detective was was
10:32:13 13  kind of what I've seen other people do or on
10:32:16 14  TV.  Me back from August 2015 to me now, I do
10:32:23 15  things a lot differently, and this case is a
10:32:23 16  large part of that just due to the complexity
10:32:27 17  and the number of moving pieces.
10:32:29 18       A lot of times I would ask for DCI
10:32:34 19  to come down and conduct a follow-up
10:32:34 20  interview or keep them apprised of things
10:32:36 21  that I was doing.  And they would, for the
10:32:42 22  most part, come down and assist or provide
10:32:45 23  assistance to me.  But sometimes with
10:32:46 24  follow-up it was Des Moines trying to track
10:32:48 25  something down, it was sometimes hard to get

173

14:59:08  1    have submitted.  And I do have those files in
14:59:11  2    my computer.
14:59:12  3       Q.  And I am going to ask that we mark that
14:59:15  4    separately as Deposition Exhibit 3.  And then
14:59:22  5    while we've been sitting here, you've had a
14:59:24  6    number of reports in front of you that you've
14:59:26  7    referred to?
14:59:27  8       A.  Yes.
14:59:28  9       Q.  And can we mark those as a group as
14:59:31 10    Deposition Exhibit 4.
14:59:38 11            And then I will just ask one more
14:59:50 12    question for today, and then we can suspend
14:59:52 13    until Friday, but we've had a number of
14:59:55 14    reports that have been discussed that you
14:59:58 15    believe have been sent to the DCI and now are
15:00:02 16    no longer findable.
15:00:04 17       A.  Yes.
15:00:05 18       Q.  Do you have a list of which reports
15:00:07 19    those are or a total number of those?
15:00:09 20       A.  I think four or five.  I know I had made
15:00:12 21    a list at one time and sent an email --
15:00:15 22    either sent an email or talked to Special
15:00:21 23    Agent Ludwick in person asking if he could
15:00:24 24    locate these reports or recordings.
15:00:29 25            MS. BRANSTAD:  Okay.  We will close

174

15:00:33  1    the record for today.
15:00:34  2            THE VIDEOGRAPHER:  Off the record.
15:00:37  3            (Deposition adjourned at 3 p.m.)

175

 1               C E R T I F I C A T E
 2
 3         I, Gale Sweeney Christensen, a
       Certified Shorthand Reporter of the State of
 4     Iowa and Registered Professional Reporter, do
       hereby certify that there came before me at
 5     the time, date, and place hereinbefore
       indicated, the witness named on the caption
 6     sheet hereof, who was by me duly sworn to
       testify to the truth of said witness's
 7     knowledge, touching and concerning the
       matters in controversy in this cause; that
 8     the witness was thereupon examined under
       oath, the examination taken down by me in
 9     shorthand, and later reduced to printed form
       under my supervision and direction, and that
10     the deposition is a true record of the
       testimony given and of all objections
11     interposed.
12         I further certify that I am neither
       attorney or counsel for, or related to or
13     employed by any of the parties to the action
       in which this deposition is taken, and
14     further that I am not a relative or employee
       of any attorney or counsel employed by the
15     parties hereto or financially interested in
       the action.
16
17         Dated at Des Moines, Iowa, this 7th
18     day of August, 2018.
19
20
                   ----------------------------
21                 CERTIFIED SHORTHAND REPORTER,
                   REGISTERED PROFESSIONAL
22                 REPORTER, AND NOTARY PUBLIC
23
24
25