1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - X
JASON CARTER,                 :
                              :
        Plaintiff,            :
                              :
vs.                           :        Case No. 4:19-cv-401
                              :
MARK LUDWICK, Agent of        :
Iowa Division of Criminal :            MOTION TO DISMISS
Investigation, in his         :
individual capacity;          :
MARION COUNTY, IOWA;          :
REED KIOUS, Marion County :
Deputy Sheriff in his         :
individual capacity;          :
BILLY GENE CARTER,            :
                              :
        Defendants.           :
- - - - - - - - - - - - - X



                        Telephonic Hearing
                        U.S. Courthouse
                        123 East Walnut Street
                        Des Moines, Iowa
                        Tuesday, August 11, 2020
                        12:58 a.m.



BEFORE:  THE HONORABLE CHARLES R. WOLLE




                 TONYA R. GERKE, CSR, RMR, CRR
                    United States Courthouse
                123 East Walnut Street, Room 197
                    Des Moines, Iowa 50309

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | NATHAN A. OLSON, ESQ.<br>Branstad & Olson Law Office<br>2501 Grand Avenue, Suite A<br>Des Moines, IA 50312<br>Olson@BranstadLaw.coM |
| | ALISON FLORENCE KANNE, ESQ.<br>Wandro & Associates<br>2501 Grand Avenue, Suite B<br>Des Moines, IA 50312<br>akanne@2501grand.com |
| | GLEN STEPHEN DOWNEY, ESQ.<br>Law Offices of Glen S. Downey<br>5214 Ingersoll Avenue<br>Des Moines, IA 50312<br>glen@downey-law.net |
| For Defendant Mark D.<br>Ludwick: | JEFFREY C. PETERZALEK, ESQ.<br>TESSA MARGARET REGISTER, ESQ.<br>Office of the Iowa Attorney General<br>1305 East Walnut Street<br>Des Moines, IA 50319<br>Jeffrey.Peterzalek@ag.iowa.gov<br>tessa.register@ag.iowa.gov |
| For Defendants Marion<br>County and Reed Kious: | JASON C. PALMER, ESQ.<br>Bradshaw, Fowler,<br> Proctor & Fairgrave, P.C.<br>801 Grand Avenue, Suite 3700<br>Des Moines, Iowa  50309-8004<br>palmer.jason@bradshawlaw.com |
| For Defendant Billy<br>Gene Carter: | DAVID N. FAUTSCH, ESQ.<br>The Weinhardt Law Firm<br>2600 Grand Avenue, Suite 450<br>Des Moines, IA 50312<br>dfautsch@weinhardtlaw.com |

1                       P R O C E E D I N G S

2              THE COURT:  Good morning and afternoon.  This is Judge

3    Charles Wolle.  I'm on the conference call in the case of Carter

4    versus several defendants.  Who are counsel on the phone at this

5    time?  First, who is on for the plaintiff, Jason Carter?

6              MS. KANNE:  Your Honor, this is --

7              THE COURT:  I didn't hear.  Will you repeat?

8              MS. KANNE:  This is Allison Kanne on behalf of the

9    plaintiff, and there are others as well.

10             THE COURT:  All right.  And who will be making the

11   arguments in opposition to the motions?

12             MS. KANNE:  Nate Olson is on the line as well, and he

13   will be making those arguments.

14             THE COURT:  Nate Olson?

15             MR. OLSON:  Your Honor, Nathan Olson for plaintiff,

16   Jason Carter.

17             THE COURT:  Okay.  And for the defendants, first, who

18   is on for Defendant Billy Carter?

19             MR. FAUTSCH:  Good afternoon, Your Honor.  This is

20   David Fautsch for the defendant, Bill Carter.

21             THE COURT:  Thank you.  And for Marion County and

22   Mr. Ludwick?

23             MR. PALMER:  Judge, this is Jason Palmer.  I represent

24   Marion County and Reed Kious, the deputy sheriff for Marion

25   County.

4

1          THE COURT:  And who is on for Mark Ludwick?

2          MR. PETERZALEK:  Good afternoon.  Jeff Peterzalek with

3    the Attorney General's Office along with Tessa Register.

4          THE COURT:  Thank you.  And now I know who will make

5    the arguments, or is there another lawyer who will be arguing

6    for the client?  Now -- go ahead.

7          MR. DOWNEY:  Your Honor, this is Glen Downey.  I'm a

8    participant for Jason Carter, but it is Nathan Olson making the

9    arguments on behalf of Mr. Carter.

10          MS. KANNE:  And Jason Carter is on the line as well,

11   Judge.

12          THE COURT:  Thank you.  We have a court reporter,

13   Kelli Mulcahy [sic], and she will provide you with a transcript

14   of this oral argument.

15          The reason I have set this for oral argument is that I

16   think the defendants all are represented by counsel and have

17   presented very strong arguments in support of their contention

18   that the amended complaint does not reach the level of

19   plausibility that's required by the U.S. Supreme Court's *Bell

20   Atlantic v. Twombly* decision, and they have cited a number of

21   other case authorities supporting their motions to dismiss.

22          So I will now hear counsel for each defendant, then

23   give counsel for plaintiff Jason the opportunity to respond, and

24   perhaps we'll have brief oral responses to plaintiff's counsel.

25          Who wishes to speak first on behalf of one of the

1  several defendants?

2          MR. PETERZALEK:  This is Jeff Peterzalek, and I can go

3  first, I think, since we're first on the pleadings.

4          THE COURT:  You may now make your argument in support

5  of the motion to dismiss your client.

6          MR. PETERZALEK:  Thank you.  I think everybody

7  understands this case starts in June of 2015 with the shooting

8  death of Shirley Carter, who was shot in her home.  The person

9  who discovered the body and called 911 was Jason Carter, and

10  we'll speak a little bit more about his involvement as we go

11  forward.  After the homicide was discovered, an investigation

12  commenced with both State and local authorities involved.  My

13  client, Mark Ludwick, was assigned as case agent from the Iowa

14  Division of Criminal Investigation to be involved in this

15  investigation.

16          During the ongoing criminal investigation, Bill

17  Carter, who was Shirley's husband and the father of Jason

18  Carter, filed a civil lawsuit in Marion County District Court

19  for wrongful death, claiming that Jason Carter had killed his

20  mother.  Because the criminal investigation was still ongoing at

21  that time, the District Court had ordered some, but not all, of

22  the DCI investigative materials to be provided to the parties

23  involved in the lawsuit.  Ultimately in December of 2017, a

24  civil jury in Marion County found Jason responsible for killing

25  his mother, and Jason has appealed from that decision.

6

1              After the civil jury verdict was entered, the -- Jason

2    was charged criminally with homicide, and after he was arrested

3    pursuant to a warrant, the judge -- a judge in the Fifth

4    District subsequently determined after a preliminary hearing

5    there was probable cause, and after all of the evidence was

6    presented, discovery completed, all of that in the criminal

7    case, the matter was presented to a jury in the criminal case,

8    and Jason was acquitted.

9              While these matters are on appeal, Jason Carter --

10   well, after the criminal trial, Jason Carter tried to vacate the

11   civil judgment.  That was denied.  That's also on appeal.  And

12   then while these matters were on appeal, Jason files this

13   77-page complaint against Mark Ludwick and others.  It's pled in

14   six counts.  There's only three of those counts that relate to

15   Mark Ludwick, and that's Count I, Count II, and Count VI, and

16   I'll kind of take those in order as we go through this.

17             Count I is captioned as a false arrest claim under

18   Section 19 -- pursuant to Section 1983 claiming there was a lack

19   of probable cause to arrest Jason Carter in this matter.  There

20   are multiple problems with their position, starting with the

21   fact that they have not cited a single case which is remotely

22   similar either factually or legally to the situation we have

23   here.  We have a situation where the District Court issued an

24   arrest warrant determining probable cause.  After a preliminary

25   hearing, the District Court -- a different judge from the one

1  who issued the arrest warrant -- determined that based on the

2  substantial evidence -- not just the evidence but substantial

3  evidence, the Court found that there was probable cause to

4  believe that Jason Carter had committed the crime he was accused

5  of, and then as I mentioned before, the matter actually went

6  to -- to a jury.

7          And there are -- there is no case -- plaintiff has not

8  cited a case where in multiple stages along the process actual

9  probable cause was determined, and as a matter of law, there is

10 actual probable cause to have arrested Mr. Jason Carter for the

11 murder of Shirley Carter, and that in and of itself takes care

12 of the false arrest claim; however, the problems really don't

13 end there.  As I noted before, they haven't cited any cases

14 similar to the one at hand, let alone a body of cases which the

15 U.S. Supreme Court requires on qualified immunity cases to

16 support their claim that Mark Ludwick wouldn't be entitled

17 qualified immunity.  And in this particular case, again, it's --

18 it's just undisputed that there was probable cause

19 determinations made by the Court in at least two different

20 occasions and a third at the time of the criminal trial.

21          We do have a Iowa District Court in the civil matter

22 that has determined that the claims that plaintiff has made with

23 respect to Mark Ludwick's involvement and the accusations that

24 are very similar in their complaint here were meritless.  The

25 only thing that's been clearly established in this case is the

1   fact that there is no law, there is no case, there is no body of

2   case law that supports their claim against Mr. Ludwick, and even

3   if the Court would determine that there could be some arguably

4   constitutional violation, there certainly is nothing in the law

5   or a body of law that would indicate that a situation where you

6   have multiple determinations of probable cause by a Court that

7   that person would not be entitled to qualified immunity.  So you

8   have those two issues on the -- on the false arrest claim, and

9   either or both of those warrant dismissal.

10          Count II -- it's really not entirely clear -- and I

11  think you can tell from the briefing -- and that really goes to

12  one of the comments you made before with respect to some of

13  the -- some of the plausibility issues in this case.  It's not

14  even completely clear what the plaintiffs are attempting to

15  assert in Count II.  It's been framed by them variously as a

16  conspiracy claim or a due process claim; however, they really

17  don't cite the elements of either one.  In their briefing, they

18  describe that claim somewhat inconsistently, as in page 18 of

19  their brief, they claim that by providing seemingly inculpatory

20  evidence to the civil plaintiffs for the use in a civil lawsuit,

21  defendant aided the civil plaintiffs in prosecuting their

22  lawsuit and simultaneously and intentionally hindered and

23  prevented Jason Carter from defending himself.  Well, that's

24  not -- that's neither a due process claim or a conspiracy claim,

25  and it just -- and then later in their brief, they -- they

1 describe the claim as evidence shows that Ludwick conspired with

2 the plaintiffs to unconstitutionally gain information in the

3 course of a civil lawsuit, again, still not setting forth the

4 elements or even a viable claim for either a due process

5 violation or a conspiracy violation under Section 1983.  They

6 simply haven't pled it, haven't pled it to the degree and

7 requirements under the law and can be dismissed on that basis

8 alone.

9        The other issue is, once again, they failed to cite a

10 single case that -- excuse me -- where any -- any situation even

11 remotely similar to this one where there was some sort of

12 liability for either conspiracy or due process, and as a

13 result -- in fact, if you look at page 20 -- I believe it's page

14 20 of their brief.  They start out by indicating in the

15 second -- that they note that it also appears that this is a

16 matter of first impression -- whatever this is is a matter of

17 first impression, which in and of itself is an indication that

18 there's no clearly established law that Mr. Ludwick or others

19 could have violated.  So -- so, once again, you end up with a

20 situation where they haven't pled either a viable due process or

21 conspiracy claim.  They haven't done anything other than

22 acknowledge that there was no clearly established law, and even

23 if you get past those two problems, as we put in our brief, they

24 run into a significant *Rooker-Feldman* problem which deprives the

25 Court of subject matter jurisdiction in this matter.

1       The allegations that they've made in their civil -- in

2  the civil matter and their attempts to vacate the judgment --

3  some of the headings in those matters are word for word the same

4  as the materials in their federal lawsuit.  The Eighth Circuit

5  has long cautioned civil litigants who lose in State court from

6  simply recasting their pleadings and filing a Section 1983 case

7  in federal court.  All of the matters that they're raising are

8  inextricably intertwined with the matters that are pled in their

9  civil case, and there is a substantial *Rooker-Feldman* issue

10  that -- that the plaintiffs, quite frankly, in response to our

11  briefing haven't done anything but point out incorrectly that

12  because they appealed the civil judgments against them that

13  *Rooker-Feldman* doesn't apply, and, of course, that's not the

14  case.

15       So, again, as with the issue on the first count, with

16  the second count, they haven't pled appropriately either a

17  conspiracy or a due process claim.  They fully admit that

18  there's no clearly established body of case law, and they have a

19  *Rooker-Feldman* problem which deprives the Court of subject

20  matter jurisdiction.  Any one of those or all of those

21  eliminates that claim as well.

22       And then, finally, Count VI is a due process claim

23  for -- relating to the investigation that Mr. Ludwick and others

24  took on in this homicide investigation.  And, again, you run

25  into a problem where from a pleading standpoint they kind of

1  plead this mismatch of procedural and substantive due process

2  but really don't set forth the elements of either one.  Clearly

3  there can't be a procedural due process claim because Mr. Jason

4  Carter was -- went through an entire criminal process and was

5  acquitted, so there can't be any procedural due process issues,

6  and the substantive due process issues were also addressed in

7  response to their claims under Count II, but with respect to

8  their claims of a problem with the investigation, they fall far,

9  far short of the requirements under a substantive due process

10  claim and shock the conscience standard, which is a question of

11  law for this Court to determine that there would be a viable

12  substantive due process claim.

13          So -- and, again, you have -- for the subject

14  matter -- you have -- overall you have subject matter

15  jurisdiction issues under Count II.  Then you have the issues

16  with respect to qualified immunity for Counts I and II, and

17  then, of course, you have the problems with -- they haven't pled

18  a viable claim for any of the three claims that involve

19  Mr. Ludwick, and that is really the -- more of a 30,000-foot

20  view of all of the problems with the plaintiff 's case, and,

21  Judge, if you have any specific questions with respect to any of

22  the issues that we've raised, I'd be happy to try to answer

23  those, but as -- as you've seen, the parties have briefed this

24  matter.  The defendants have raised substantial issues and

25  provided overwhelming authority that these claims are not viable

1  and should be dismissed.  But, again, if you should have any

2  questions about any of the particular issues that involve

3  Mr. Ludwick, I'd be happy to try to answer those.

4          THE COURT:  I have one question.  Thank you for

5  your -- outlining your client's position.  Has there been any

6  issue raised in this case by the pleadings that was not raised

7  in the Iowa State court?

8          MR. PETERZALEK:  You know, I think after -- I would

9  say -- not that I've been able to determine I guess would be the

10  appropriate answer.  It is the same case repackaged, and rather

11  than claiming that there was a problem with the investigation

12  that requires vacation of the judgment in the civil case, they

13  raise the same issues with respect to the investigation that

14  they claim raise false arrest and substantive due process

15  claims, so as far as the issues involved, not that I've seen,

16  Judge.  I think they're one and the same.

17          THE COURT:  Thank you.  Now on behalf of one of the

18  other defendants?  Who wishes to make oral argument in support

19  of the motion to dismiss?

20          MR. PALMER:  Yes, Judge.  This is Jason Palmer on

21  behalf of Marion County and Reed Kious.  I'll go next.  We would

22  first, of course, incorporate and adopt the position brought by

23  the State as well.  As relates to Count I that is also brought

24  against Mr. Kious for false arrest, I have nothing to add as it

25  relates to that count, Your Honor.  Obviously the Court on at

1  least three occasions found probable cause, and as a result the

2  false arrest claim doesn't survive.

3          Count II, Mr. Kious is also a part of Count II.  The

4  only significant difference besides what the State raised was

5  that Mr. Kious was not -- or Marion County was not subpoenaed in

6  the underlying civil action.  They tend to put Marion County and

7  Mr. Kious together with the State within the pleadings which is,

8  of course, the problem with a shotgun pleading.  That's

9  addressed by the briefs, but it's important to note that Marion

10 County and Mr. Kious were not even subpoenaed in the underlying

11 civil action.  So factually they were not a part of it.  There

12 was no providing of documents as it relates to that.

13          Then we have Count III.  That is separate to Marion

14 County.  That's a *Monell* liability claim.  First, of course,

15 Mr. Kious we believe isn't liable at all which means that the

16 claim against Marion County doesn't survive as a matter of law.

17 But the biggest point to raise here is that the case law is

18 very, very clear within the Eighth Circuit and the United States

19 Supreme Court that a single incident does not rise to a level of

20 a *Monell* claim, and that's exactly what we have here.  There's

21 no -- there's nothing pled where there is a pattern of conduct

22 here by Mr. Kious and that was previously approved of by Marion

23 County.  So we don't -- we don't have a *Monell* claim.

24          There's also a very vague reference to improper

25 training as relates to Mr. Kious, and they essentially just

1   misquote the deposition of Mr. Kious where they say he was

2   trained by watching TV essentially, but it's very clear from

3   what we set forth that Mr. Kious just said his perception of

4   what a detective was was from watching TV.  There's nothing at

5   all pled that outlines there was a improper training of

6   Mr. Kious where he was not qualified to be hired and retained as

7   a detective here.  So we believe Count III also fails as a

8   matter of law.

9           Count IV is a malicious prosecution claim.  I believe

10  that is only against Mr. Kious.  A element of that that they

11  have to show, that there was no probable cause.  That relates

12  back to Count I, Your Honor.  There simply was a probable cause.

13  The Court said that on at least three occasions, so that's

14  enough for that claim to be dismissed.  But because Mr. Kious

15  was also a public official, malice cannot be inferred.  It

16  cannot be inferred.  You have to have showings and pled facts of

17  actual malice, which is ill will, hatred, wrongful motive, and

18  there's simply nothing that's even pled that would suggest that.

19  So we believe that count should also be dismissed.

20          As it relates to Count V, abuse of process, I believe

21  that is also -- well, that's brought against Mr. Carter and

22  Mr. Kious.  It's important to note that they're talking about

23  the underlying civil action, that Mr. Kious somehow abused the

24  process by the filing of the underlying civil action.  He wasn't

25  even a part of it.  He wasn't a party.  And so they have to show

1   that based upon the only case law that we could find, Judge,

2   from CJS is a treatise that they actively participated in it.

3   Not even close.  There's no pled facts here that he was involved

4   in the underlying civil action from an active perspective or

5   somehow -- somehow told or tried to push Mr. Carter into filing

6   this claim.

7          Again, he wasn't subpoenaed for documents at all.

8   Marion County was never subpoenaed for documents.  And, of

9   course, there has to be an improper purpose.  Even if somehow

10  the Court finds that he actively participated in this civil

11  action somehow by bringing it shows no pled facts.  What's the

12  improper purpose in bringing this action that Mr. Carter did?

13         I believe the plaintiffs admitted in their briefing

14  that the purpose was to obtain a civil judgment.  Exactly.

15  That's not improper.  There was nothing improper at all of

16  Mr. Carter bringing this action.  In fact, he was successful.

17  So we believe that abuse of process claim fails as a matter of

18  law as well.

19         Finally, we have Count VI.  Mr. Kious is a part of

20  that claim along with the State and Mr. Ludwick.  Again, for all

21  the reasons that were set forth by the State, it's very clear

22  here that both parties -- they have the discretion in terms of

23  how to run that investigation.  There's not any pled facts that

24  show that they had any overt wrongful conduct to manufacture any

25  evidence.  They have the ability and that discretion to take

1   leads how they believe fit the case.  And the Eighth Circuit is

2   very, very clear on that, and for those reasons we believe that

3   that count should be dismissed as well.

4           So unless the Court has any questions --

5           THE COURT:  No.  I will now hear argument on behalf of

6   Defendant Billy Gene Carter.

7           MR. FAUTSCH:  Good afternoon, Judge.  This is David

8   Fautsch speaking.  I represent Bill Carter.  Mark Weinhardt and

9   I tried the civil case in Marion County where we obtained the

10  10.25 million dollar judgment against Jason Carter, so I'm more

11  than happy to talk to you about any of the procedural or

12  substantive nuances of that case which, of course, remains on

13  appeal.  It's being briefed on appeal.  Many of the issues that

14  they raise in this case as issues of substantive abuse of

15  process or some sort of wrongdoing by Bill Carter are being teed

16  up in front of the Iowa Supreme Court at the moment.  I will

17  incorporate and adopt, as other defense counsel have stated,

18  there's plenty of pleading problems with this case, and I won't

19  repeat all of those except to say that we agree.

20          I'll note just a few things that are particular for

21  Mr. Bill Carter.  The first one is the Section 1983 claim.  Bill

22  has never worn a badge.  He's never had a uniform.  He's never

23  been employed by the State.  He's never received any money from

24  the State.  He has never been given a traditional State function

25  by which to conduct himself.  He's a farmer.  His wife was

1  murdered five years ago, and he took it upon himself to figure

2  out who had done that.  He entered a civil lawsuit and proved in

3  a civil ballot, a still enforceable State court judgment, that

4  Jason Carter was responsible for that homicide.

5       The notion here -- and I think this is crux of the

6  legal dispute that is teed up for you, Judge -- is the

7  plaintiff, Mr. Jason Carter, appears to think that if there is

8  some sort of tacit agreement on anything, then -- between the

9  State and Bill Carter that it's enough to somehow create Bill

10 Carter as a State actor, and that's not the law at all.

11      It is -- in order for a conspiracy claim to exist as,

12 you know, assuming substantively as they have pled it, they

13 would have to show that there was an intent to substantively

14 deprive Jason of Fifth and Fourteenth Amendment rights here, not

15 just simply that there was an agreement to prove his culpability

16 for Shirley Carter's death.  At most, they have shown the

17 agreement to demonstrate Jason's culpability, and that is not

18 sufficient to show that Bill is a State actor.

19      And, finally, the abuse of process claim.  It is -- it

20 really does strain credulity as to imagine how a valid

21 enforceable State court judgment that has been attacked on

22 multiple occasions in the Iowa District Court and each time

23 refuted could possibly be a valid abuse of process claim in

24 federal court.  Of course, I think the issue that Jason's

25 lawyers take with this primarily in their pleadings is that we

1   have attached the many orders from this case where District

2   Courts have rejected the same sorts of claims that are being

3   brought in front of this Court, and they've simply said, don't

4   look at that; ignore the man behind the curtain, if you will,

5   but, of course, this Court's not required to do that.  It is the

6   State court pleading.  The rejection of the arguments that are

7   in front of this Court are necessarily embraced by the complaint

8   itself, and this Court is free to consider the judgments of

9   Marion County as they decided that this judgment against Jason

10  was valid and enforceable.

11           I'll -- I'll pick up one final thing, Your Honor, of a

12  question that you asked Mr. Peterzalek.  You had asked if

13  there's anything different between the pleadings in this case

14  and the pleadings in the underlying civil State court action.

15  There are no material differences.  And the reason there are no

16  material differences is because each of these -- and we've

17  included these petitions to vacate in our response -- each of

18  these petitions to vacate are literally copied and pasted into

19  the complaint before this Court.  But even if they weren't

20  carbon copies of what was before the State court, it wouldn't

21  matter because the standard is a common nucleus of operative

22  facts and so all of these slings and arrows that Jason has found

23  to hurl at the State and at his father arise from the same

24  common nucleus of operative facts.  So even if he finds some

25  different wrongdoing that he would now like to dig into, the law

1    simply doesn't permit him to do that.

2           So with that, I'll be happy to field any questions,

3    Your Honor.

4           THE COURT:  Thank you for presentations on behalf of

5    the defendants.  I believe that means that all defendants have

6    been represented in oral arguments.

7           Now on behalf of the plaintiff, Jason Carter, I'll

8    hear your response to the motion to dismiss.

9           MR. OLSON:  Thank you, Your Honor.  Nathan Olson on

10   behalf of Jason Carter.

11          Throughout arguments, throughout briefing, the

12   defendants continue to argue the facts of the case and what

13   those facts mean.  That's not an appropriate argument for a

14   motion to dismiss.  That's why we're here.  All the facts in the

15   second amended complaint are assumed true.  The only question

16   before the Court is assuming all those facts are true, have

17   the -- is there sufficient pled causes of action that Jason

18   could plausibly be entitled to relief, and that second

19   amended -- amended complaint satisfies the standard, and the

20   standard is clear.  Assuming the facts are true, all reasonable

21   inferences taken in favor of the amended complaint construed

22   liberally, this is -- so all of the facts -- everything that the

23   defendants are arguing about what these facts mean, that's all

24   for motion for summary judgment.  That's after discovery.

25   That's after they actually file a motion for summary judgment.

1   Your Honor, that's not the standard here.

2          THE COURT:  Do you agree that the test is set forth

3   in -- as plausibility and that there are cases that allow a

4   motion to dismiss to be supported by some exhibits?

5          MR. OLSON:  Okay.  Your Honor, one, yes, I do agree

6   that the standard is plausibility, and with -- with that

7   plausibility, you have to take all of the facts as assumed as

8   true and the inferences.  The Court can review certain documents

9   that are embraced by the pleadings, but that word embraced is

10  defined and it's provided context by case law.

11         For example, a document or an exhibit or something

12  proposed by a party is not considered embraced by a pleading if

13  it's offered to contradict a fact that's pled.  There's case law

14  we cited, but that's the *BJC Health Systems* case from the Eighth

15  Circuit in 2003.  Or if a document's importance or significance

16  is disputed, again, that's not embraced, so that's not a

17  document for a motion to dismiss hearing when the facts or the

18  significance are questioned.  That's for summary judgment.  Or

19  if a document contradicts facts that are in the complaint, that,

20  again, that shouldn't be considered.  That's the *Kushner v.*

21  *Beverly Enterprises* case, Eighth Circuit 2003.  And just

22  straightforward, when material contradicts a complaint, it

23  shouldn't be considered on a motion to dismiss.  That's *Miller*

24  *v. Redwood Toxicology Labs.*  That's Eighth Circuit from 2012.

25  So it's not that there -- we're not asserting no documents can

1   ever be reviewed.  This is a contract case where the contract is

2   disputed but not attached to a complaint.  Okay.  Absolutely.

3   And that -- that is embraced by the complaint.  But where

4   there's factual questions or issues, that's a situation where it

5   shouldn't be, and that's really what the defendants are putting

6   in front of the Court.

7           Regarding --

8           THE COURT:  Is there anything -- I have a final

9   question for Mr. Jason Carter.

10          MR. OLSON:  Yes, Your Honor.

11          THE COURT:  Is there anything raised in this federal

12  lawsuit that hasn't already been raised in the State of Iowa

13  case?

14          MR. OLSON:  Your Honor, there is.  The most -- one of

15  the most glaring differences is we're raising an issue of

16  damages to Jason Carter on behalf of the actions of Bill Carter

17  and all these other defendants, some of which were never a party

18  in any of the prior State cases.  So that in and of itself is a

19  completely separate issue.

20          The issue of abuse of process both as the State claim

21  as well as the constitutional claims that have those alleged

22  failures to investigate and to hide evidence, that -- those

23  issues were never before the civil jury.  The civil jury never

24  heard any of that evidence because it was hidden away.  It

25  wasn't provided to them.  So the -- Billy Carter's allegation

1   that this is the same nucleus of operative facts, if this was --

2   if we were only talking about the evidence before that civil

3   jury, okay, possibly, but that's not what we're talking about.

4   We're talking about the two and a half years of investigatory

5   evidence that the State had in their pocket that only came out

6   after that civil judgment through criminal discovery.  That's

7   what this case is about.  That's not a common nucleus of

8   operative facts of the underlying civil case.  It's separate.

9   So we do have separate issues.

10          THE COURT:  And in this case, this federal case, what

11  do -- what does Jason Carter contend were his damages?

12          MR. OLSON:  The damages -- so in this federal case?

13          THE COURT:  Yes.

14          MR. OLSON:  As a nonexclusive list, Your Honor,

15  obviously part of the damages is that 10 million dollar judgment

16  if the current State actions don't address it.  There would be

17  potentially attorney's fees.  There could be punitive damages

18  are requested on certain of these claims, payment for pain and

19  suffering.  There's a number of damages that the elements are

20  different than what the underlying claim in the civil case was

21  or even could have been because some of these wrongful acts were

22  not known to Jason at the point in time he went to trial on that

23  civil case.

24          So we have a number of different issues that -- the

25  facts -- some of the facts that we allege that are put forth in

1   the claims to -- to try to vacate the judgment, some of those

2   underlying facts might be the same.  The issues before that

3   court were different because all that could have happened in the

4   lower court was to get rid of the judgment.  There could have

5   been no damages awarded.  It was only getting rid of the

6   judgment or granting a new trial.  So if the Court does consider

7   that at this level, it seems like that's much more appropriate

8   for summary judgment and not motions to dismiss.  The questions

9   and issues are different.  So -- so we do have a different case

10  than what was done at the State court below.

11          And in looking at the different counts, Count I -- the

12  false arrest, the lack of probable cause, even if the Court does

13  consider the arrest warrant and the preliminary hearing, which

14  it's questionable whether or not that's embraced, the facts

15  before both of those courts though were vastly different than

16  what's here before this Court.  All the exculpatory evidence

17  that was known to law enforcement at the time both they

18  requested that warrant and at the preliminary hearing was

19  undisclosed.  There was myriad material of exculpatory evidence

20  that was not disclosed to those courts, and case law is very

21  clear that law enforcement doesn't get to just turn a blind eye.

22  That's the *Kuehl* case.  If law enforcement is contemplating an

23  arrest, they can't disregard plainly exculpatory evidence.  It

24  has to look at everything.  It has to conduct a reasonably

25  thorough investigation.  It has that duty prior to arrest.  All

1 the evidence that we properly plead weighs negatively on

2 probable cause.  None of that information was provided to the

3 Court when issuing the arrest warrant or to the Court when

4 reviewing preliminary hearing, so really in some ways that's

5 that *Franks* doctrine question.  A material misrepresentation or

6 omission.  That was a decision made by law enforcement to not

7 tell the Court, to falsely get that arrest warrant and to

8 falsely provide -- or fail to provide information at a

9 preliminary hearing to support that arrest.  That's the false

10 arrest.  It's not that, hey, we got an arrest warrant; it's the

11 actual facts known to law enforcement at the point in time.  Was

12 that sufficient to actually support probable cause?  And the

13 facts as we plead them in our second amended complaint show no,

14 there was not probable cause.  So it's plausible based on our

15 facts pled that there was not probable cause to support that

16 arrest, and, therefore, it was false, and that claim should

17 survive.

18          And I -- and regarding the immunity question raised by

19 the State and Mr. Ludwick, they're trying to cast this case as a

20 dual probable cause once-in-a-lifetime situation, but that's not

21 the case law.  The question in clearly established case law is

22 how do you determine probable cause?  And how you determine

23 whether or not probable cause exists is you look at everything

24 known to law enforcement under the *Kuehl* case.  They reviewed

25 that.  An officer contemplating arrest is not free to exclude

1   plainly exculpatory evidence, and that's what happened in this

2   case.  So the clear case law regarding immunity is how do you

3   determine probable cause?  It was ignored in this case, and

4   because it was ignored, law enforcement can't hide behind

5   qualified immunity.  Regarding -- so, therefore, qualified

6   immunity doesn't apply.

7           Regarding the due process and concealment of evidence

8   claim, that's against all three defendants.  Again, we pled

9   sufficient facts to survive the motions to dismiss.  We alleged

10  that they conspired.  They acted together.  Their joint desire

11  was to conceal exculpatory evidence.  Now, this is a situation

12  where law enforcement walked into that underlying civil case.

13  They took the affirmative action to share information and

14  information that only appeared to make Jason look guilty,

15  though.  They knew all of the other information that was

16  exculpatory that we have sufficiently pled, but their choice to

17  enter the lawsuit, to work with the civil plaintiffs, a choice

18  to help draft discovery responses, as we've alleged, their

19  choice to help draft deposition questions and to meet with

20  counsel and the client and to enter what otherwise would be an

21  attorney-client privileged conversation shows their active

22  involvement, and the concealing of evidence is shown by a number

23  of points not the least of which is the statement by Billy

24  Carter's own counsel when -- after Jason files his first amended

25  petition to vacate that underlying civil case in State court,

1   his counsel said on the news, We knew about this information for

2   a long time.  That was never disclosed.  The fact that they're

3   sharing exculpatory information between themselves but excluding

4   Jason Carter from that in the underlying civil case shows a

5   joint desire to conceal.  And the fact that they both

6   benefited -- both the State in obtaining sworn testimony and

7   information that in their view led to Jason Carter's arrest and

8   put pressure on him and the fact that Billy Carter benefited in

9   getting information that helped him obtain a civil judgment

10  shows that conspiracy.

11          And, again, based on what we've pled, it's plausible

12  that we survive that case -- or we survive that.  It is

13  plausible that our facts alleged would lead to a judgment

14  against them for that -- for the conspiracy joint action to

15  conceal evidence.  And I understand --

16          THE COURT:  At least one -- at least one of the

17  defendants and perhaps two have contended that in the second

18  amended complaint there is no allegation of conspiracy.  Explain

19  where the allegation of conspiracy is and who are alleged to be

20  the conspirators.

21          MR. OLSON:  Your Honor, the allegation of conspiracy

22  is the joint action.  It's a due -- our actual claim, our count

23  is a due process violation to conceal evidence against all

24  parties.  So it's not a straight -- we didn't title it a

25  conspiracy claim, but the facts that support that claim, the

1  underlying actions of each of the defendants is the joint action

2  together that benefits that they all -- the decision that they

3  each took that benefits the other and to act against Jason

4  Carter's interests.  That's the conspiracy, that's the action

5  they took together.  So I understand -- it's not a claim of

6  conspiracy.  It's a due process -- a substantive due process

7  claim where they each acted to conceal evidence that violated

8  Jason Carter's due process rights.

9           THE COURT:  You may continue your argument.  Now you

10  have answered my questions.

11          MR. OLSON:  Thank you, Your Honor.  And regarding -- I

12  know Billy Carter says that he's not a State actor, but look at

13  the case law cited in the actions:  the joint action, the joint

14  benefit, the symbiotic relationship.  These are key words in

15  Eighth Circuit case law that clearly provide that an individual

16  who partakes in those actions, even if he doesn't wear a badge,

17  even if he isn't paid by the State, even if he isn't titled some

18  State title transforms into a State actor for the purposes of a

19  lawsuit such as this.  We've alleged that.  Assuming the facts

20  pled are true, we have sufficiently pled and survive the motion

21  to dismiss here.

22          Regarding the *Monell* liability, this is regarding Reed

23  Kious's claim and the County's claim.  This is an action

24  regarding a failure to properly train and properly supervise.

25  The defendants are just flat wrong.  The U.S. Supreme Court case

1  law says that a single action can trigger -- a single event can

2  trigger *Monell* liability -- that's the *Board of County*

3  *Commissioners v. Brown*, 520 U.S. 397, a 1997 case.  If it's a

4  failure to train its employees that handle a recurring situation

5  or that presents an obvious potential for a constitutional

6  violation, that failure to train can be construed as a, quote,

7  policy, unquote for a municipality such as Marion County here.

8  That's *Canton*.  That's the *Canton* case that we cite.

9         And here's what we have in this case.  We have a road

10 deputy, Deputy Kious.  He was a road deputy, and he was promoted

11 to be an investigator detective for this case.  He doesn't have

12 proper training.  He worked with the civil plaintiffs, and his

13 oversight -- the sheriff was removed from the case.  He had no

14 oversight.  He had no proper training.  Our facts as alleged

15 under clear U.S. Supreme Court case law and Eighth Circuit case

16 law provide a plausible avenue for recovery for *Monell*

17 liability.  It's plausible that this policy, as the Court, even

18 though it was a single act, so ripe for constitutional

19 violations, the County should have known and should have

20 recognized it and should have protected against it.

21        Regarding the malicious prosecution case, again, we

22 pled sufficient facts.  I understood -- I agree with the

23 defendants' recitation of the elements.  Lack of probable

24 cause -- again, the findings of probable cause by other courts

25 doesn't matter because the individuals who sought probable cause

1  findings didn't tell those courts about material exculpatory

2  information that they are required to under Eighth Circuit case

3  law, U.S. Supreme Court case law, Iowa Supreme Court case law.

4  They left it out, so those probable cause findings mean nothing.

5          Regarding malice also, Deputy Kious is a public

6  employee.  Malice has to be shown.  But if you actually look at

7  how you can find malice and look at the intentional actions of

8  ignoring evidence that we have pled properly, and the actions of

9  him moving to violate Jason's rights through sharing evidence

10  and meeting with individuals who are trying to put a civil

11  judgment against him -- we're not asking you infer malice.  We

12  say that he wanted something wrong.  He had a bad intent towards

13  Jason because there's no probable cause and there's no other

14  explanation for his actions other than that.

15          And, Your Honor, under Iowa case law, which malicious

16  prosecution is a State law claim, these questions are for a

17  jury.  That's the *Davis v. Rudolph* case.  So these questions are

18  fact questions for a jury, not ripe for a motion to dismiss at

19  this stage.  He ignored exculpatory evidence.  He only focused

20  on inculpatory evidence, as we pled.  We plausibly could recover

21  on this claim.  It should not be dismissed at this level.

22          In general, the same thing regarding the abuse of

23  process claim against Deputy Kious and Billy Carter.  Improper

24  purpose, yes.  Legal process was used.  A 10 million dollar

25  judgment was obtained below.  Billy Carter admitted he only did

1    that in order to try to spur law enforcement into action, but

2    the improper purpose that defendants don't seem to recognize is

3    the action with the State, that secretive action with the State

4    to get testimony from Jason Carter under oath.  The State had no

5    right to that.  And Billy Carter knew what he was doing,

6    planning to -- discovery responses and deposition questions and

7    litigation planning and allowing law enforcement to meet with

8    him and his attorney privately, to share evidence with DCI and

9    take only inculpatory evidence and use at trial even though

10    Billy Carter knew and the State knew that there was other

11    exculpatory statements, actual confessions, statements about

12    where the alleged murder weapon was hidden, information from

13    informants that showed people had specific knowledge of the

14    murder scene that would not have been known to a casual

15    individual in the public.  This isn't -- this isn't a failure to

16    follow up some unreliable tip.  This is information that any

17    reasonable law enforcement officer would follow up on, and they

18    allowed that civil process to go on and use the plaintiff's side

19    to exert pressure on Jason and not share the information.

20    That's the improper purpose.  They got sworn testimony that they

21    were not constitutionally allowed to do through a civil case in

22    order to try to put pressure and in order to violate Jason

23    Carter's constitutional rights.

24          THE COURT:  You may wind up your argument for the

25    plaintiff, and then I'll hear a brief reply from defendants'

1    counsel.

2           MR. OLSON:  Thank you, Your Honor.  And, lastly, the

3    due process violation for failure to investigate, I would most

4    importantly look at that *Wilson v. Lawrence County* [sic].  It's

5    Eighth Circuit 2001.  What -- looking at that case, in that case

6    they found that there was a failure to invest -- a proper due

7    process violation, failure to investigate claim when officers

8    had a confession from a person they charged.  It was coerced,

9    and that confession was actually corroborated by another

10   coercion.  It was involving someone who had some mental

11   condition and they coerced a confession, and law enforcement

12   failed to follow up on numerous leads pointing elsewhere for

13   five and a half months, and the Eighth Circuit found that that

14   five-and-a-half-month failure to follow up on leads that were

15   clearly exculpatory survived and supported a failure to

16   investigate claim.

17          Here we have no confession from Jason.  We have

18   confessions from other people, including myriad other leads and

19   evidence pointing elsewhere that was not followed up in some

20   cases for multiple years, but even more than that five and a

21   half months in *Wilson*.  It's a failure to investigate.  In this

22   case law enforcement is well aware that if a lead is not

23   followed up on, it goes cold quickly.  It does.  And the sad

24   thing about -- about their failure to investigate is it tore

25   this family apart.  They pointed at Jason early on and ignored

1   myriad exculpatory evidence that came in after the fact because

2   they were just focused.  So this failure to investigate, it fits

3   numerous different case law scenarios.  They say that there's no

4   case law that supports it.  But if you look at *Johnson v. Moody*,

5   evidence of systemic pressure to implicate the defendant in the

6   face of contrary evidence.  They had contrary evidence for

7   years, and they continued to push the investigation against

8   Jason through the civil case and to the criminal case.  The

9   investigation failure started June 19 of 2015.  They did

10  practically no investigation from approximately March of 2016

11  until after Ludwick and Kious were deposed in July of 2018.

12  There's no -- virtually no investigation done even though the

13  leads kept coming in, confessions, where the murder weapon is,

14  information from people who had knowledge or people who heard

15  from others who had knowledge about the murder scene and what

16  happened.  They sat on it until they were faced in deposition

17  with their failures, and then they tried to follow up, but it

18  was too late because the leads went cold.  That's a failure to

19  investigate, and it's a due process violation.  It's a violation

20  of Jason Carter's rights.  Again, we pled all these facts.

21          THE COURT:  Thank you for your presentation.  That

22  ends the plaintiff's oral argument and now a brief response by

23  defendants' counsel.  Tell me who is speaking, and then you may

24  make a reply argument.

25          MR. PETERZALEK:  Thank you, Judge.  This is Jeff

1    Peterzalek on behalf of Special Agent Mark Ludwick.  I would

2    first note that if you look at the materials that were attached

3    by the defendants from the District Court proceedings, all of

4    the things that Mr. Olson just talked about, the leads that

5    weren't investigated, the things that weren't presented to the

6    Court are part and parcel of what is directly dealt with by the

7    District Court in the civil matter.

8             I would also note that when you asked Mr. Olson what

9    was different about this case, the first thing he mentioned was

10   trying to get the 10 million dollars in damages back from the

11   civil case, a civil case that's on appeal before the Supreme

12   Court, and I think that the plaintiff's own statements could not

13   have more directly implicated *Rooker-Feldman* than what was done

14   here.

15            The other thing I'll just mention briefly, Judge, is I

16   and the other defendants intentionally kept away from getting

17   into any factual disputes, and we talked about the law based on

18   their pleadings.  You don't have to assume that their legal

19   conclusions are true, their legal conclusion that there was no

20   probable cause, but yet you don't -- you don't have to accept

21   that as true.  And you can't be precluded from looking at the

22   actual findings of probable cause from the criminal case.  The

23   plaintiffs can't simply say and make a legal conclusion that

24   there's no probable cause, but, Judge, you can't look at the

25   documents that show that probable cause was found on multiple

1    occasions.  And those are really the things that I would like to

2    point out here.

3            If you go to Count VI, again -- well, Count II also.

4    Apparently it's not a conspiracy case anymore even though that

5    was argued in the briefing.  It's still completely unclear what

6    it is because, as I mentioned before, they don't plead a

7    conspiracy case and they don't plead a viable due process case,

8    and that's the same with respect to Count VI as well.

9            And, again, their mention of the *Franks* doctrine, they

10   don't plead anything that shows that any materials in the

11   affidavit or the criminal complaint getting the arrest warrant

12   are untrue.  They add all this other peripheral stuff in there,

13   but they don't mention anything that was untrue that was put in

14   there.  So, again, it's just another failure to plead the

15   requisite elements of each and every one of these claims, and

16   I'll just leave it at that, Judge.  Thank you for your time in

17   considering this.

18           THE COURT:  Thank you.  Oral argument in reply by

19   counsel for any other defendants?

20           MR. PALMER:  Judge, this is Jason Palmer for Marion

21   County and Reed Kious.  Real briefly, Count III, the *Monell*

22   liability, they speak nothing in their pleading about what

23   training policy is at play here.  They simply just make legal

24   conclusions and factual conclusions, and there's just nothing to

25   suggest at all that there's a pattern here.

1              As relates to the malicious prosecution, the proof for

2    malice, they -- they seem to argue that they did plead actual

3    malice, but there's just simply nothing in the pleading at all

4    that would suggest that Reed Kious acted with ill will toward --

5    toward Jason Carter.  It -- it cannot be inferred, and, of

6    course, there was a probable cause, and we believe that count

7    should be dismissed, and that is it, Your Honor.

8              THE COURT:  Thank you.  Any other oral argument on

9    behalf of a defendant?

10             MR. FAUTSCH:  Your Honor, this is David Fautsch for

11   Bill Carter.  I will note just one overarching concern I have

12   about the plaintiff's recitation of Eighth Circuit law.  You

13   would think by hearing it that the Eighth Circuit had some sort

14   of liberal or permissive approach to this sort of action, and

15   nothing could be further from the truth.  We've pointed the

16   courts to a case in our briefing, *Reasonover v. St. Louis*

17   *County*, to explain the high standard by which plaintiffs are

18   held by the Eighth Circuit when trying to make these sorts of

19   claims against a State actor, and in that case in particular

20   they tried to rope in a psychiatrist who had been hired by the

21   police who had done investigative work for the police in a case

22   that was alleging a wrongful conviction after an exoneration.

23   So I think you have to take with a grain of salt this idea that

24   there is permissive or liberal case law coming from the Eighth

25   Circuit on these kinds of cases.  Quite to the contrary, it

1  would appear to us that these sorts of theories are very much

2  frowned upon.  I have nothing further.

3          THE COURT:  Thank you.  That completes the oral

4  arguments.  Please contact the Court for a transcript of the

5  hearing that will be available to you if you request it, and you

6  may request that from my law clerk, Ann Beneke, or directly from

7  Kelli Mulcahy.

8          THE COURT REPORTER:  Excuse me, Your Honor.  Excuse

9  me, Your Honor.  This is Tonya Gerke.  Just so the minutes are

10  clear, Tonya Gerke reporting the hearing in Kelli's place.

11          THE COURT:  Oh, I'm sorry.  I thought it was Kelli.

12          THE COURT REPORTER:  That's all right.  That's okay.

13  It was going to be.

14          THE COURT:  And your address if they wish to request a

15  transcript?

16          THE COURT REPORTER:  I'm with the federal court, so

17  they can also get ahold of me at the federal courthouse.

18          THE COURT:  Yes.  And you may request it also from Ann

19  Beneke who knows better than I who was actually reporting.

20  Thank you.  Have a good day.  That ends the oral arguments.

21          (Proceedings concluded at 2:01 p.m.)

22

23

24

25

37

1                   C E R T I F I C A T E

2           I, Tonya R. Gerke, a Certified Shorthand Reporter of

3   the State of Iowa and Federal Official Realtime Court Reporter

4   in and for the United States District Court for the Southern

5   District of Iowa, do hereby certify, pursuant to Title 28,

6   United States Code, Section 753, that the foregoing is a true

7   and correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the regulations of

10  the Judicial Conference of the United States.

11          Dated at Des Moines, Iowa, this 21st day of October,

12  2020.

13

14

15                          /s/ Tonya R. Gerke
                            Tonya R. Gerke  CSR, RMR, CRR
16                          Federal Official Court Reporter

17

18

19

20

21

22

23

24

25