IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JASON CARTER,<br><br>Plaintiff,<br><br>v.<br><br>MARK LUDWICK, Agent of Iowa Department of Criminal Investigation, in his official capacity;<br><br>MARION COUNTY, IOWA;<br><br>REED KIOUS, Marion County Deputy Sheriff in his individual capacity;<br><br>BILLY GENE CARTER,<br><br>Defendants. | Case No. 4:19-cv-00401-CRW-CFB<br><br><br><br>**BRIEF IN SUPPORT OF**<br>**PRE-ANSWER MOTION TO DISMISS** |

COMES NOW Defendants, Marion County, Iowa and Reed Kious, by and through undersigned counsel, and for their Brief in Support of their Rule 12(b)(6) Pre-Answer Motion to Dismiss Plaintiff's Amended Complaint, state as follows:

follows:

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 3

STANDARD OF REVIEW ............................................................................ 3

ARGUMENT ................................................................................................... 4

   A. PLAINTIFF'S SECOND AMENDED COMPLAINT IS A "SHOTGUN PLEADING" WHICH IS IMPERMISSIBLE UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(a) AND (d) .............................................................. 4

1

B. THE COURT CAN CONSIDER THE ARREST WARRANT AND RESULTING DECISIONS FROM THE CRIMINAL AND CIVIL LAWSUITS UNDERLYING THIS ACTION ................................................................... 5

C. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST MUST BE DISMISSED ................................................................................................ 7

D. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION MUST BE DISMISSED ............................................................................... 8

E. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR MONELL LIABILITY MUST BE DISMISSED ........................................................................................... 10

F. PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION MUST BE DISMISSED ................................................................................................ 12

G. PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS MUST BE DISMISSED ................................................................................................ 13

H. PLAINTIFF'S CLAIM UNDER COUNT VI MUST BE DISMISSED ................................................................................................ 14

I. PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES AGAINST THE COUNTY MUST BE DISMISSED ............................................................... 17

CONCLUSION ................................................................................... 18

**INTRODUCTION**

This case arises from the criminal investigation and subsequent legal proceedings following the murder of Shirley Carter. The criminal investigation took place over a couple of years and included investigating numerous tips and potential suspects. During the course of the investigation, Plaintiff Jason Carter became a person of interest in Shirley Carter's murder. While the investigation was ongoing, Jason Carter's father, Bill, initiated a wrongful death action in state court against Jason for the death of Shirley. Following the trial, the jury entered judgment in Bill's favor, finding Jason Carter civilly liable for Shirley Carter's murder.

After the civil trial had concluded, on December 16, 2017, an arrest warrant was issued for Jason Carter for the murder of Shirley Carter. Jason Carter was subsequently taken into custody by Marion County law enforcement. On December 22, 2017, the Marion County district court concluded there was probable cause to allow the criminal proceedings to move forward. Following the criminal trial, Jason Carter was acquitted by the jury on March 22, 2019. Jason Carter has now filed this lawsuit against his father, Bill, as well as Marion County and two of the law enforcement officers involved in the criminal investigation, for numerous causes of action relating to the underlying criminal investigation, criminal trial, and civil trial.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) authorizes this Court to dismiss any complaint failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a Rule 12(b)(6) motion, a Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). In ruling on a Rule 12(b)(6) motion, a district court must accept the factual allegations contained in the complaint as true. *Iqbal*,

556 U.S. at 678. However, legal conclusions and "formulaic recitation of the elements of a cause of action" may be properly set aside by the court. Id. In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim. Id. Consequently, plaintiffs are required to "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Neither *Iqbal* nor *Twombly* changed the familiar axiom that when considering a Rule 12(b)(6) motion, all reasonable inferences are to be drawn in favor of the non-moving party. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). However, it is not reasonable to infer liability for the misconduct alleged if a Complaint merely "tenders naked assertions devoid of further factual enhancements" or makes allegations that only set forth "the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Further, in evaluating the "calculus of plausibility" of the alleged conduct, the district court may draw upon its judicial experience and common sense, and may consider whether there are "more likely explanations" consistent with otherwise unactionable conduct. *Id*. at 681.

## ARGUMENT

**A.     PLAINTIFF'S SECOND AMENDED COMPLAINT IS A "SHOTGUN PLEADING" WHICH IS IMPERMISSIBLE UNDER FEDERAL RULE OF CIVIL PROCEDURE 8(a) AND (d).**

As an initial matter, Plaintiff's Second Amended Complaint must be dismissed because it violates Federal Rule of Civil Procedure 8(a) and (d). These rules provide that a pleading must contain a "short and plain statement of the claim showing that the plaintiff is entitled to relief," and the allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a) & (d) (emphasis added). Plaintiff's Second Amended Complaint—which contains 520 paragraphs—is a "shotgun pleading" and contains "several counts, each one incorporating by reference the allegations of its

predecessors, leading to a situation where most of the counts (*i.e.*, all but the Second) contain irrelevant factual allegations and legal conclusions." *Sagez v. Glob. Agr. Invs., LLC*, No. 11-CV-3059-DEO, 2015 WL 1647921 at *4 (N.D. Iowa Apr. 14, 2015).

"Shotgun pleadings violate Rule 8's requirement to set forth 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" and are "especially problematic when pleading numerous causes of actions with substantially different elements." *Id*. (quoting Fed. R. Civ. P. 8(a)(2)); see also *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc*., 162 F.3d 1290, 1332 (11th Cir.1998) (urging district courts to intervene and prohibit shotgun pleadings, and explaining a 173-pargraph complaint's "general allegations operated as camouflage, obscuring the material allegations of [plaintiff's] claims and necessarily implying that all the allegations were material to each claim.").

Accordingly, Plaintiff's Second Amended Complaint is improper and must be dismissed.

**B.    THE COURT CAN CONSIDER THE ARREST WARRANT AND RESULTING DECISION FROM THE CRIMINAL PROCEEDINGS UNDERLYING THIS ACTION.**

Ordinarily, under Rule 12(b)(6) motions, where matters outside the pleadings are presented to the court, the court should treat the motion as being one for summary judgment, rather than as a motion to dismiss. *Gorog v. Best Buy Co., Inc*., 760 F.3d 787, 791 (8th Cir. 2014). However, this rule is not absolute. The Eighth Circuit has held repeatedly that a court may consider materials outside the complaint itself on a motion to dismiss, without converting the motion into one for summary judgment, if the materials relied upon are "necessarily embraced by the complaint." *Enervations, Inc. v. Minnesota Mining & Mfg., Co*., 380 F.3d 1066 (8th Cir. 2004). Courts may also consider "some materials that are part of the public record or do not contradict the complaint…." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). "For example, courts may

consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Id.* (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

This includes consideration of court orders following preliminary hearings in underlying criminal actions to determine whether probable cause exists to support criminal charges. *Sands v. McCormick*, 502 F.3d 263, 268 (3rd Cir. 2007); *Dias v. Elique*, 276 Fed.Appx. 596, 2008 WL 1913358, at *2 (9th Cir. Apr. 30, 2008) (affirming district court's granting of Rule 12(b)(6) motion to dismiss based upon determination in underlying criminal action that probable cause existed to investigate plaintiff). It is also includes arrest warrants issued in the underlying criminal action. *Kennedy v. Peele*, 552 Fed.Appx. 787, 792 (10th Cir. 2014) (finding district court erred in not considering affidavit used to support warrant for plaintiff's arrest in underlying criminal action in Rule 12(b)(6) Motion to Dismiss); *Beacham v. Annerino*, 82 F.3d 420 (Table), 1996 WL 175079 (7th Cir. Apr. 11, 1996) ("The district court could properly take judicial notice of [arrest warrants from the underlying criminal proceedings] in deciding the motion to dismiss."); *Torres-Lopez v. Olivo-Miranda*, 478 F.Supp.2d 182, 188 (D.P.R. 2007) ("The Court takes judicial notice of the existence of a warrant in support of Plaintiff Torres' arrest."). Finally, it also incudes jury verdicts from underlying actions. *E.g. Kemin Foods, L.C. v. Pigmentos Vegetales del Centro S.A. de C.V.*, 384 F.Supp.2d 1334, 1352 (S.D. Iowa 2005) ("The Court will Second take judicial notice of the jury verdict and this Court's own post-trial determinations that the '714 and '564 patents are valid and enforceable.").

Here, these authorities make clear the Court can consider the arrest warrant issued against Jason Carter (attached hereto as Exhibit A), a transcript from the contested preliminary hearing

from the underlying criminal case (attached hereto as Exhibit B), and the jury verdict—which shows that the criminal case was given to the jury to resolve (attached hereto as Exhibit C).

C. **PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST UNDER COUNT I MUST BE DISMISSED.**

Plaintiff brings his 42 U.S.C. § 1983 claim for false arrest against Kious. The law is clear that a claim for false arrest, brought under 42 U.S.C. § 1983, fails as a matter of law if the officer had probable cause to make the arrest, because such an arrest is not in violation of the Fourth Amendment. *Rose v. City of Mulberry*, 533 F.3d 678, 680 (8th Cir. 2008); *Anderson v. Larson*, 327 F.3d 762, 770 (8th Cir. 2003); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). "Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed ... an offense' at the time of the arrest." *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir. 1996) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986)). In other words, the standard is "the probability, and not a prima facie showing, of criminal activity" for whether probable cause exists. *Id*.

As probable cause exists, Kious is entitled to qualified immunity. In § 1983 actions, an officer is qualifiedly immune if he "does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An officer need only have *arguable* probable cause to maintain qualified immunity. *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015). "Where the alleged constitutional violation involves an arrest pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Saterdalen v. Spencer*, 725 F.3d 838, 841 (8th Cir. 2013).

Here, Plaintiff's claim must fail because the Court properly found probable cause to arrest Plaintiff, and thus Kious is qualifiedly immune. As Plaintiff makes clear in his Complaint, Plaintiff was acquitted of the criminal charges filed against him on March 22, 2019, which clearly indicates the acquittal was decided by a jury. Amended Complaint, ¶ 500; *see also* Exhibit C. However, in order for the criminal trial to have reached the jury, there would have been several instances in which the Court— a neutral third-party—determined that probable cause did exist to allow the criminal case to proceed, and thus Kious is qualifiedly immune. This occurred in the underlying case when the judge issued the Arrest Warrant for Jason Carter on December 16, 2017, which explicitly stated:

> [ X ] A Complaint having been filed, **the Court finds probable cause** to believe that the offense(s) set forth in the complaint have been committed and the defendant committed said offense.

Ex. A (emphasis added). It happened again on December 22, 2017, when the district court issued its Order Following Preliminary Hearing, in which the court stated:

> Based upon the substantial evidence presented, **the Court finds there is probable cause** to believe that the offense alleged in the complaint has been committed and that the Defendant committed it.

Ex. B (emphasis added). Finally, it happened a third time when, following both sides' presentation of their respective cases, the Court concluded that there was sufficient evidence to submit the issue to the jury. *See* Ex. C. Each of these instances show that probable cause was found to exist at numerous instances during the criminal proceedings. Accordingly, probable cause existed to arrest and try Plaintiff for the murder of Shirley Carter and Plaintiff's false arrest claim must be dismissed because the Defendants are qualified immune.

**D.     PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION UNDER COUNT II MUST BE DISMISSED.**

Plaintiff brings his 42 U.S.C. § 1983 claim for Due Process violation for alleged concealment of evidence against Kious. Plaintiff bases his claim on Kious's actions from the underlying civil action. Amended Petition, ¶¶ 450–61. Plaintiff's claim must be dismissed, because there is no constitutional violation for failing to turn over exculpatory evidence.

Under *Brady v. Maryland*, 373 U.S. 83, 87 S.Ct. 1194, 10 L.Ed.2d 215 (1963), it is a violation of the Due Process Clause for a prosecutor **in a criminal case** to suppress evidence that is favorable to an accused, irrespective of good faith or bad faith. 373 U.S. at 87. Plaintiff's claim that Kious's alleged failure to turn over exculpatory evidence is seeking to have the Court apply a *Brady* requirement to civil actions. However, "courts have only in rare instances found *Brady* applicable in civil proceedings, mainly in those unusual cases where the potential consequences 'equal or exceed those of most criminal convictions.'" *Fox ex rel. Fox v. Elk Run Coal Co., Inc.*, 739 F.3d 131, 138–39 (4th Cir. 2014) (quoting *Demjanjuk v. Petrovsky*, 10 F.3d 338, 354 (6th Cir. 1993)). In other words, courts only extend Brady to civil cases in cases where "a person's liberty is at stake." *Kashem v. Barr*, 941 F.3d 358, 387 (9th Cir. 2019). The District Court for the District of Columbia explained the limited scenarios in which *Brady* was applied to civil cases, stating the extension had only occurred in cases involving: 1) a Nazi war criminal was facing denaturalization and extradition in which the extradition would cause the individual to face trial on a charge carrying the death penalty; 2) civil commitment proceedings; and 3) when the government engaged in pleading a "skeleton complaint" in employment discrimination case and refused to provide any meaningful details to show defendant what it was accused of doing, making it impossible for defendant to defend against the allegations. *Brodie v. Dept. of Health and Human Srvs.*, 951 F.Supp.2d 108, 118–19 (D. D.C. 2013) (citing *Demjanjuk v. Petrovsky,* 10 F.3d 338 (Nazi war criminal case); *United States v. Edwards*, 777 F.Supp.2d 985 (E.D.N.C. 2011) (civil commitment

proceedings); *EEOC v. Los Alamos Constructors*, 382 F.Supp. 1373 (D.N.M. 1974) ("skeleton complaint" tactics).

Here, the underlying civil action was a wrongful death action. This is not the type of case where the exception to the general rule that *Brady* is inapplicable to civil claims because Plaintiff's "liberty" was not at issue. *Kashem*, 941 F.3d at 387. Instead, the civil action only sought monetary damages. Accordingly, Plaintiff's claim must be dismissed as the Due Process Clause did not require the alleged exculpatory evidence be given to Plaintiff in the civil action. *See Fox ex rel. Fox*, 739 F.3d at 138–39.

### E. PLAINTIFF'S 42 U.S.C. § 1983 CLAIM FOR MONELL LIABILITY UNDER COUNT III MUST BE DISMISSED.

Plaintiff brings his 42 U.S.C. § 1983 claim for *Monell* liability against the County. There are three separate ways an individual can pursue a *Monell* claim against a defendant. Municipal liability under § 1983 may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1089 (8th Cir. 2018). Plaintiff's Complaint appears to allege claims under each of these three categories. See Doc. 1, ¶¶ 74–86.

Taking each type of claim in turn, in order to bring a *Monell* claim under the "official municipal policy," Plaintiff must show "the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007). To succeed in a *Monell* claim due to a governmental entity's "custom" Plaintiff must show:

1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Thelma D. By and Through Delores A v. Bd. of Educ. Of City of St. Louis*, 934 F.2d 929, 932–33 (8th Cir. 1991). Finally, in regards to the deliberate indifference in failure to train, Plaintiff must show a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cnty.*, 874 F.3d 581, 585 (8th Cir. 2017).

Regardless of the category alleged, a *Monell* claim requires that Plaintiff allege sufficient facts showing that the action alleged is not simply a single occurrence, but rather, is consistent with a widespread history of behavior. See *Thelma D.*, 934 F.2d at 932–33 (requiring a showing of a "widespread, persistent pattern of unconstitutional conduct" to set forth a prima facie Monell claim based upon a custom); *Wedemeier v. City of Ballwin, Mo.*, 931 F.2d 24, 26 (8th Cir. 1991) ("Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom. By the same token, a single deviation from a written, official policy does not prove a conflicting custom or usage"); *Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (quoting *Board of Cnty. Com'rs. of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 409 (1997))).

Here, Plaintiff fails to provide any facts in his Complaint showing that the allegations extend beyond the single instance involving Plaintiff, other than providing simply conclusory allegations. Merely providing conclusory statements is not sufficient to establish a Monell claim. See *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a Monell claim where the plaintiff "alleged no

facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of the plaintiff's rights); *see also Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable *Monell* claim "[t]he description of a policy or custom and its relationship to the underlying constitutional violation...cannot be conclusory; it must contain specific facts."). Moreover, the underlying counts are dismissed, and no Monell liability can exist. Plaintiff's Count III must be dismissed.

### F. PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION UNDER COUNT IV MUST BE DISMISSED.

Plaintiff bases his malicious prosecution claim on the underlying criminal action in which Plaintiff was acquitted. This claim was brought against Kious. In order to set forth a claim for malicious prosecution, Plaintiff must show:

> (1) a previous prosecution; (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of [the] defendant for bringing the prosecution, and (6) damage to [the] plaintiff.

*Wilson v. Hayes*, 464 N.W.2d 250, 259 (Iowa 1990) (quoting *Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988)). In order to prove malice, Iowa courts require a showing that the defendant acted with an improper purpose in bringing about the criminal action. *Wilson v. Lapham*, 195 N.W. 235 (Iowa 1923) ("To constitute malice there must have been an improper motive or purpose."); *Schneider v. Rodgers*, 752 N.W.2d 33 (Table), No. 07- 0471, 2008 WL 508481 (Iowa Ct. App. Feb. 27, 2008) ("The remedy's primary purpose is to provide relief in those cases in which a plaintiff brings a meritless suit and has an improper motive for bringing it.").

Plaintiff's claim fails for two reasons. First, Plaintiff cannot satisfy the "want of probable cause" requirement, as that in order for the criminal trial to have reached the jury (which Plaintiff

plead that it did), there were several instances in which the Court—a neutral third-party—determined that probable cause did exist to allow the criminal case to proceed. As was explained above, probable cause was found to exist at numerous points during the underlying criminal action. *See* Exs. A, B, and C. Accordingly, there was no "improper purpose" in Defendants' actions as there was probable cause to pursue criminal charges against Plaintiff. This claim must be dismissed.

### G. PLAINTIFF'S CLAIM FOR ABUSE OF PROCESS UNDER COUNT V MUST BE DISMISSED.

Plaintiff brings his abuse of process claim against Kious. Plaintiff alleges three different grounds for the claim: 1) Kious's alleged role in causing the civil action to be brought against Plaintiff; 2) Kious's alleged failure to turn over exculpatory evidence to Plaintiff; and 3) Kious's involvement in arresting Plaintiff. To set forth a claim for abuse of process, Plaintiff must show: 1) the use of a legal process; 2) its use in an improper or unauthorized manner; and 3) she suffered damages as a result of the abuse. *Fuller v. Loc. Union No. 106 of the United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 421- 22 (Iowa 1997). "Abuse of process . . . is the intentional use of legal process for an improper purpose incompatible with the lawful function of the process by one with an ulterior motive in doing so. . . .The improper use which is the essence of the tort is ordinarily an attempt to secure from another some collateral advantage not properly includable in the process itself, and is . . . a form of extortion in which a lawfully used process is perverted to an unlawful use." *Sarvold*, 237 N.W.2d at 449 (citations omitted) (internal quotations omitted). Abuse of process differs from malicious prosecution in that an abuse of process claim may exist even when the plaintiff of the underlying suit had probable cause and was ultimately successful (i.e., no malicious prosecution). *Wilson v. Hayes*, 464 N.W.2d 250, 266 (Iowa 1990). "One who uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed, is

subject to liability to the other for harm cause by the abuse of process." *Grell v. Poulsen*, 389 N.W.2d 661, 663 (Iowa 1986) (quoting Restatement (Second) of Torts § 682 (1977)). "The significance of [the] word [primarily] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose or benefit." *Id*. (quoting Restatement (Second) of Torts § 682). "For abuse of process to occur there must be use of that process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it." *Id*. (quoting Restatement (Second) of Torts § 682).

Here, no such showing can be made, as Defendants had a legitimate reason for pursuing criminal charges against Plaintiff. As stated above, there were numerous instances during the criminal trial when the district court—a neutral third party—found there to be probable cause to pursue the charges. As was explained above, probable cause was found to exist at numerous points during the underlying criminal action. *See* Exs. A, B, and C. Accordingly, the criminal proceedings were not brought for an improper purpose, and therefore, this claim must be dismissed.

### H. PLAINTIFF'S CLAIM UNDER COUNT VI MUST BE DISMISSED.

Finally, Count VI alleges Reed Kious' investigation into Shirley's death was so deficient that it deprived him of substantive due process under the Fifth and Fourteenth Amendments to the United States Constitution. But qualified immunity is again required because Jason's identified case—*Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001)—is completely distinguishable from the present case and is therefore insufficient to overcome qualified immunity. And Reed Kious' investigation was not constitutionally deficient.

"To establish a substantive due process violation, [a plaintiff] must show that the behavior of the [official] was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (internal quotations and citation omitted). "[S]ubstantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002)) (alterations in original).

"[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Indeed, mere negligence cannot "wor[k] a deprivation in the constitutional sense." *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 548 (1981) (Powell, J., concurring)).

Whether conduct is conscience-shocking is a question of law. *Terrell*, 396 F.3d at 981. Importantly, "[o]nly the most severe violations of individual rights that result from the 'brutal and inhuman abuse of official power' rise to this level." *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012) (quoting *C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010)). "[C]onduct intended to injure in some way *unjustifiable by any government interest* is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (emphasis added).

Jason alleges that Reed Kious failed to follow up on certain leads and the purportedly subpar investigation deprived him of substantive due process. However, "[n]egligent failure to investigate other leads or suspects does not violate due process." *Wilson v. Lawrence Cty.*, 260

15

F.3d 946, 955 (8th Cir. 2001); *see also Akins*, 588 F.3d at 1184 ("An officer's negligent failure to investigate inconsistencies or other leads is insufficient to establish conscience-shocking misconduct."). "Even allegations of *gross negligence* fail to establish a constitutional violation." *Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007). Here, Jason merely makes conclusory allegations of recklessness and has not alleged any facts that rise beyond negligence.

Jason previously asserted that *Wilson* places Reed Kious' conduct beyond debate, but *Wilson* does not resemble this case in the slightest. In *Wilson*, officers coerced a clearly dubious confession from a young man with known cognitive disabilities, which was prompted by a statement implicating him by another young man with known cognitive disabilities. 260 F.3d at 950. This was the extent of the officers' investigation. *Id.* The Court cautioned that failure to investigative leads alone was insufficient to establish recklessness. *Id.* at 955. But the Court found the shocking act of coercing a confession from a young man with known disabilities, *coupled with* a wholesale failure to take any investigative steps beyond coercing a confession, could give rise to a plausible finding of recklessness. *Id.*

Here, conversely, a close reading of the Complaint reveals that law enforcement received tips implicating the following individuals in Shirley Carter's murder: Joel Followill, John Followill, Joseph Sedlock, Matt Kamerick, Callie Shinn, Michelle Daniels, Jason Beaman, Jeremiah Laird, Amber Shinn, Chris Brees, Kory Ford, Nichole Sedlock, Rory Pearson, Sue Dabb, Jim Dabb, Bill Carter, and Jason Carter. The Complaint demonstrates these tips were based on varying levels of hearsay, provided conflicting accounts of the murder, and came from a wide array of individuals motivated by a wide array of subjective interests. The Complaint further demonstrates that Reed Kious and his team were actively investigating the murder, receiving tips on suspects, and making credibility determinations as to which leads were worthy of expending

16

limited resources to investigate further. An officer does not violate the Constitution simply by declining to assign credibility to aspiring informants who lack first-hand knowledge of the crime. Nor can it be said that Reed Kious was "so inspired by malice or sadism," that his decision not to find certain individuals credible, or his alleged statements during witness interviews, "amounted to brutal and inhumane abuse of official power literally shocking to the conscience." *Akins*, 588 F.3d at 1183 (quoting *Moran*, 296 F.3d at 647).

This case is "materially distinguishable" from *Wilson*. *Rivas-Villegas*, 142 S. Ct. at 8. Taking all facts as true, Reed Kious and his team obtained statements from numerous aspiring tipsters and made credibility determinations along the way. He applied for a warrant and a judge determined probable cause exists. A prosecutor reviewed the information and decided to seek a First-Degree Murder charge. After a contested preliminary hearing, another court confirmed probable cause existed to support the charge and proceed with a trial. At the conclusion of evidence, which included a full exploration of the extent of Reed Kious' investigation, the court took Jason's directed-verdict motion under advisement and sent the question of Jason's guilt to the jury. Jason was entitled to, and in fact utilized, the full panoply of constitutional procedures designed to safeguard the integrity of arrests and criminal charges. At every juncture, probable cause was found. Accordingly, Reed Kious did not violate Jason's substantive-due-process rights, he did not run afoul of any established precedent, and Count VI must be dismissed.

I. **PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES AGAINST THE COUNTY MUST BE DISMISSED.**

In the event that the Court does not dismiss all claims brought against the County, the Court dismiss Plaintiff's claims for punitive damages against the County. Iowa Code § 670.4(1)(e) expressly provides that a municipality shall be immune from liability for "any claim for punitive

damages." Iowa Code § 670.4(1)(e); see also *Baldwin v. City of Estherville*, 929 N.W.2d 691, 698–99 (Iowa 2019) (holding that Iowa Code § 670.4(1)(e) "precludes an award of punitive damages against the municipality that employed the constitutional tortfeasor."). Accordingly, Plaintiff's claim for punitive damages against the County must be dismissed.

## CONCLUSION

For the reasons set forth above, the Defendants, Marion County, Iowa and Reed Kious, Marion County Sheriff in his individual capacity, respectfully request the Court dismiss Plaintiff's Complaint in its entirety.

MARION COUNTY, IOWA, AND REED KIOUS, DEFENDANTS,

By: _____
Jason C. Palmer AT0006089
LAMSON DUGAN & MURRAY, LLP
1045 76th Street, Suite 3000
West Des Moines, Iowa 50266
Telephone: (515) 823-0458
Facsimile: (402) 397-7824
E-mail: jpalmer@ldmlaw.com

ATTORNEY FOR MARION COUNTY, IOWA AND REED KIOUS

Original filed.

Copy to:

Glen S. Downey
**LAW OFFICES OF GLEN S. DOWNEY**
5214 Ingersoll Avenue
Des Moines, Iowa 50312
Telephone: (412) 865-7110
Facsimile: (515) 259-7599
E-mail: glen@downey-law.net

Christine E. Branstad
Nathan Olson

18

**BRANSTAD & OLSON LAW OFFICES**
2501 Grand Avenue, Suite A
Des Moines, Iowa 50312
Telephone: (515) 224-9595
Facsimile: (515) 281-1474
E-mail: Branstad@BranstadLaw.com
olson@branstadlaw.com

Alison F. Kanne
Steven P. Wandro
**WANDRO & ASSOCIATES, P.C.**
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312
Telephone: (515) 281-1475
Facsimile: (515) 281-1474
E-mail: akanne@2501grand.com
swandro@2501grand.com

ATTORNEYS FOR PLAINTIFF

Jeffrey C. Peterzalek
Tessa Register
**OFFICE OF THE ATTORNEY GENERAL OF IOWA**
1305 E. Walnut Street
Des Moines, Iowa 50309
Telephone: (515) 281-5164
E-mail: jeffrey.peterzalek@ag.iowa.gov
Tessa.Register@ag.iowa.gov

ATTORNEYS FOR DEFENDANT MARK LUDWICK

| CERTIFICATE OF SERVICE |
|---|
| The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 23rd day of January, 2023 by: |
| ☐ U.S. Mail ☐ FAX <br> ☐ Hand Delivered ☐ UPS <br> ☐ Federal Express ☑ Other: CM/ECF <br> /s/ Deniece Gaudineer |