**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| JASON CARTER, | Case No. 4:19-cv-00401-CRW-CFB |
| Plaintiff, | |
| v. | |
| MARK LUDWICK, Agent of Iowa Department of Criminal Investigation, in his official capacity; | **DEFENDANTS MARION COUNTY, IOWA AND REED KIOUS'S REPLY BRIEF TO PLAINTIFF'S RESISTANCE TO DEFENDANTS' RENEWED RULE 12(b)(6) PRE-ANSWER MOTION TO DISMISS** |
| MARION COUNTY, IOWA; | |
| REED KIOUS, Marion County Deputy Sheriff in his individual capacity; | |
| BILLY GENE CARTER, | |
| Defendants. | |

**COME NOW** the Defendants Marion County, Iowa ("the County") and Reed Kious, Marion County Sheriff in his individual capacity ("Kious"), by and through undersigned counsel, and for their Reply to Plaintiff's Resistance of Defendants' Rule 12(b)(6) Pre-Answer Motion to Dismiss, state as follows:

## TABLE OF CONTENTS

I.   DEFENDANTS' ARGUMENTS FOR DISMISSAL ARE PROPERLY BEFORE THE COURT................................................................................................2

II.  PLAINTIFF'S SECOND AMENDED COMPLAINT IS A "SHOTGUN PLEADING" AND MUST BE DISMISSED................................................................3

III. THE COURT CAN CONSIDER THE EXHIBITS INCLUDED IN DEFENDANTS' PRE-ANSWER MOTION TO DISMISS, REGARDING THE ARREST WARRANT, THE DISTRICT COURT RULING FOLLOWING THE PRELIMINARY HEARING, AND THE JURY VERDICT FORM FROM THE UNDERLYING CRIMINAL TRIAL……………………………………………....6

IV.      PLAINTIFF'S COUNT I ALLEGING A VIOLATION 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST MUST BE DISMISSED……………………………………….7

V.      PLAINTIFF'S COUNT II ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION FOR ALLEGED CONCEALING OF EVIDENCE MUST BE DISMISSED……………………………………………….10

VI.      PLAINTIFF'S COUNT III ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR MONELL LIABILITY MUST BE DISMISSED……………………………...11

VII.      PLAINTIFF'S COUNT IV ALLEGING MALICIOUS PROSECUTION MUST BE DISMISSED………………………………………………………………….........14

VIII.      PLAINTIFF'S COUNT V ALLEGING ABUSE OF PROCESS MUST BE DISMISSED……………………………………………………………………15

IX.      PLAINTIFF'S COUNT VI ALLEGING DUE PROCESS VIOLATION BROUGHT UNDER 42 U.S.C. § 1983 FOR FAILURE TO INVESTIGATE MUST BE DISMISSED………………………………………………………………………21

X      CONCLUSION………………………………………………………………………24

### I.   DEFENDANTS' ARGUMENTS FOR DISMISSAL ARE PROPERLY BEFORE THE COURT.

Plaintiff asserts that the Eighth Circuit "considered all of Kious's arguments, and only saw fit to dismiss Count III."  Plaintiff is incorrect and is attempting to mislead the Court.  The Eight Circuit concluded "that the district court erred in finding that it lacked subject matter jurisdiction over the remaining claims under the Rooker-Feldman doctrine."  *Carter v. Ludwick*, 854. Fed. Appx. 107, 108 (8th Cir. 2021); *see also,* Doc. 55 (ordering all counts dismissed via a preliminary subject matter jurisdiction analysis without analysis of Defendants' arguments for dismissal).  After ruling that this Court does indeed have subject matter jurisdiction over these claims, the Eighth Circuit remanded all remaining claims back to this Court for consideration *in the first instance*.  *Carter*, 854 Fed. Appx. at 108 (emphasis added).

As to the counts made the bases of Defendants' motions to dismiss, the Eighth Circuit merely overruled this Court's analysis of the <u>Rooker-Feldman</u> doctrine, not on the merits of Defendants' arguments for dismissal.  Neither the Eighth Circuit's Opinion, nor this Court's Order Dismissing All Counts contain analysis of Defendants' arguments for dismissal.  Further, the Eighth Circuit's "consideration in the first instance" language is instructive of this fact.  Finding that the matters are not properly before this Court would run afoul of the plain language of this instruction from the Eighth Circuit.

Importantly, there has been an entire additional round of dispositive motions and a subsequent opinion from the Eighth Circuit remanding the motions to dismiss for the district court to rule on defendants' claims.  *Carter v. Ludwick*, 2022 U.S. App. LEXIS 30655, at *2 (8th Cir. Nov. 4, 2022).  This Court's Order of October 25, 2021 made clear that the Plaintiff's argument that the Eighth Circuit decided the merits of these arguments for dismissal is incorrect and ignores the plain language of the directive to this Court from the Eighth Circuit.

## II.   PLAINTIFF'S SECOND AMENDED COMPLAINT IS A "SHOTGUN PLEADING" AND MUST BE DISMISSED.

Plaintiff argues that his Second Amended Complaint is not an impermissible "shotgun pleading."  Plaintiff is wrong.  The Eleventh Circuit has provided a clear discussion on the different types of shotgun pleadings, stating:

> Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings.  **The most common type–by a long shot–is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.**  The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  **Fourth, and finally, there is the relatively rare sin of asserting multiple**

**claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.** The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (emphasis added) (internal citations removed). Iowa federal courts have repeatedly expressed concerns with shotgun pleadings, specifically in cases where numerous causes of action are being brough that have different elements and standards. *See Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1016 (S.D. Iowa 2009). "Such pernicious complaints 'shift … onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support.'" *Sagez v. Global Agr. Invs., LLC*, No. 11-CV-3059-DEO, 2015 WL 1647921, at *4 (N.D. Iowa Apr. 14, 2015) (quoting *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F.Supp.2d 1151, 1153 (D. Minn. 2011)). Further, "'[t]hey waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts.'" *Temple v. Roberts,* 15-CV-5062-JLV, 2018 WL 4120036, at *5 (D.S.D. Aug. 29, 2018) (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)).

Plaintiff's Second Amended Complaint falls into the first and fourth categories described by the Eleventh Circuit (multiple counts adopting all prior allegations), as each claim set forth by Plaintiff contains the same paragraph stating, "Plaintiff incorporates by reference the allegations of the proceedings paragraphs as though set forth at length herein." Doc. 30, at ¶¶ 441, 448, 461, 478, 491. Plaintiff's Second Amended Complaint, as written, makes it incredibly difficult for Defendants to determine the factual allegations supporting each of the claims brought against them. Plaintiff's Second Amended Complaint is 77 pages long and contains nearly 500 factual

allegations. Plaintiff alleges six different claims[1]—which have very different elements and/or standards from each other—against numerous different Defendants.

Additionally, Plaintiff's Second Amended Complaint falls under the fourth category, as Plaintiff's claims differ on which Defendants they are being brought against, with some counts being brought against some, but not all, of the Defendants. The issue with this is that some facts relevant to one claim are not relevant to another claim. Further, some facts are related to the conduct of some defendants, but not others. For example, at least 100—if not 200 or more—of the factual allegations contained in the Second Amended Complaint mention only Defendant Ludwick or actions taken only by Defendant Ludwick.[2]   However, each of these factual allegations is incorporated into each of the claims against Defendants Kious and Marion County. It is entirely unclear what effect, if any, these numerous allegations have on the claims raised against Defendants Kious and Marion County. Likewise, on its face, some of the claims raised by Plaintiff appear to relate solely to the underlying criminal investigation, whereas others appear to relate solely to the underlying civil litigation. However, once again, each of the claims incorporates factual allegations that are unrelated to the underlying criminal investigation or underlying civil litigation. Again, it is unclear what, if any, effect these factual allegations have on Plaintiff's various claims.

---

[1] Plaintiff's Second Amended Complaint made several changes to the causes of actions being alleged by Plaintiff, including the deletion of four causes of action that were previously included in Plaintiff's First Amended Complaint and the inclusion of a new cause of action. Despite these changes, the factual allegations contained in the Second Amended Complaint remained virtually unchanged from the First Amended Complaint. Had Plaintiff's Second Amended Complaint been written in a succinct manner aimed only at providing the material allegations needed for each cause of action, one would expect there to be numerous changes to the factual allegations, as the elements and standards for the deleted causes of action differ from the other causes of action included in the Second Amended Complaint. However, such changes did not occur, leading to serious questions as to what allegations are material to each claim and which are simply unnecessary detail aimed at camouflaging the truly material allegations.

[2] Indeed, many of the factual allegations Plaintiff relies upon to preclude dismissal of his claims against Defendants Kious and Marion County make no mention of either Defendant. Rather, the factual allegations pertain only to Defendant Ludwick or actions taken solely by Defendant Ludwick. It is unclear how Defendants are liable for Defendant Ludwick's actions (Plaintiff provides no explanation), making it virtually impossible for Defendants to be able to respond to such arguments, as Defendants Kious and Marion County do not have personal knowledge of the actions allegedly taken by Defendant Ludwick.

At this point, Plaintiff has filed three different Complaints in this matter. None of these Complaints have been written in a manner that would allow the Defendants to reasonably understand which of the hundreds of factual allegations pertain to the claims brought against each individual Defendant and which are wholly irrelevant. Plaintiff and his attorneys have had ample opportunity to provide a clearly written Complaint. They have chosen not to do so. The fact that Plaintiff has included so many factual allegations to support his claims against Defendants Kious and Marion County that do not make any mention of Defendants Kious and Marion County will lead to an exponential increase in litigation costs, as Defendants will be required to undergo massive amounts of discovery simply to understand what actions Defendant Ludwick did or did not take so that Defendants Kious and Marion County can properly defend themselves. Due to Plaintiff's repeated failures to provide a coherent Complaint, the Court must dismiss Plaintiff's Second Amended Complaint.

### III.     THE COURT CAN CONSIDER THE EXHIBITS INCLUDED IN DEFENDANTS' PRE-ANSWER MOTION TO DISMISS.

Plaintiff argues that the Court cannot consider the exhibits Defendants included in their Renewed Rule 12(b)(6) Pre-Answer Motion to Dismiss and instead, may only consider the exhibits if the Court converts Defendants' Motion into a Motion for Summary Judgment. This is not true. As Defendants explained in their prior Brief, there is considerable case law from the Eighth Circuit and numerous other jurisdictions showing such exhibits may be considered on a motion to dismiss. Plaintiff's Resistance does not dispute this case law in any way, and instead, seems to suggest that the Court can never consider materials outside the four corners of a complaint on a motion to dismiss.

Case law from the Eighth Circuit completely contradicts Plaintiff's position. *E.g.*, *Enervations, Inc. v. Minnesota Mining & Mfg., Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004) (courts may consider materials outside the complaint itself on a motion to dismiss, without converting the motion into one for summary judgment, if the materials relied upon are "necessarily embraced by the complaint."); *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (stating courts may consider "some materials that are part of the public record or do not contradict the complaint…" on a motion to dismiss). Here, the exhibits Defendants have introduced to this Court fall into the scope of information that may be considered on a motion to dismiss. *See id.*; *see also* Doc. 31-1, pp. 5-7.

## IV.   PLAINTIFF'S COUNT I ALLEGING A VIOLATION 42 U.S.C. § 1983 CLAIM FOR FALSE ARREST MUST BE DISMISSED.

Plaintiff contends that there was not probable cause to support his arrest for the murder of Shirley Carter. Plaintiff spends considerable energy attempting to discredit each of the facts listed on the affidavit filed in connection with the application for the arrest warrant to argue that no probable cause existed to support the arrest. However, when the other findings of probable cause by the district court are considered—the district court's December 22, 2017 Order Following Preliminary Hearing and when the district court, at the conclusion of presentation of both parties' cases during the criminal trial, allowed the case to go to the jury—it is clear that Plaintiff's argument is meritless.

Further, Plaintiff cites to no case law supporting his assertion that the Court cannot consider the fact that the case was submitted to the jury as evidence of probable cause.[3]  Probable

---

[3] Plaintiff states, without citation to the record, that the state criminal court withheld its ruling as to whether evidence was sufficient to submit the case to the jury.  Defendants have been unable to locate such a ruling, and Plaintiff provides no citation to its assertion that the matter was not decided.  Plaintiff concedes that the criminal trial court did ultimately submit the case to the jury.

cause exists where there is "reasonable grounds to believe the assertion, not absolute certainty of the assertion." *In re Det. Of Mead*, 790, N.W.2d 104, 111 (Iowa 2010).  An analysis of whether to submit the case to a jury under Iowa law turns on "whether the evidence could convince a jury of the defendant's guilt beyond a reasonable doubt." *State v. Schooley*, 804 N.W.2d 105, 106 (Iowa Ct. App. 2011).  These are very different standards, and even if the state criminal court withheld a ruling determining the reasonableness of a finding of Defendant's guilty beyond a reasonable doubt, the fact that the case was presented to the jury at all is evidence that "reasonable grounds" existed for probable cause.

Eighth Circuit case law is clear that the finding of probable cause on three different occasions—one of which occurred at the end of the criminal trial—defeats Plaintiff's false arrest claim, as there can be no "false arrest" if probable cause existed. *Rose v. City of Mulberry*, 533 F.3d 678, 680 (8th Cir. 2008); *Anderson v. Larson*, 327 F.3d 762, 770 (8th Cir. 2003); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001). Plaintiff attempts to discredit these findings by arguing that the facts supporting the arrest warrant were not legitimate and arguing that Defendants did not follow-up on tips until shortly before trial or in one instance, during trial. There are several issues with these arguments.

First, Plaintiff provides no case law supporting his assertion that the three findings of probable cause can be ignored because leads were not investigated until shortly before trial. Indeed, Plaintiff has failed to point to a single case that is similar to the facts alleged here. Second, Plaintiff's attempts to discredit the finding of probable cause at trial by submitting the case to the jury is unavailing, as Plaintiff's own arguments show that the alleged exculpatory evidence—except for one instance—was investigated prior to trial. Indeed, the exculpatory evidence Plaintiff alleges Defendants failed to investigate was received by Plaintiff prior to his

criminal trial. *See* Doc. 39-1, pp. 15–16. Thus, while Plaintiff attempts to argue that the fact that

case went to the jury "means nothing," that is simply false as the trial court, despite being made

aware of the exculpatory evidence Plaintiff attempts to rely upon here, determined there was

sufficient probable cause to allow for the jury to decide whether Plaintiff was guilty. *See U.S. v.*

*Thompson*, 493 F.3d 359, 363 (8th Cir. 1974) (recognizing that standard for submitting case to

jury to decide is whether there is sufficient evidence to support a finding of conviction). Finally,

while Plaintiff cites to numerous allegations in his Second Amended Complaint to support his

claim against Defendant Kious, this argument is misplaced, as the vast majority of factual

allegations Plaintiff points to relate solely to actions taken by Defendant Ludwick—Defendant

Kious is not mentioned whatsoever. *See* Doc. 30, ¶¶ 85–95; 180–192; 204; 210; 223–228; 236–

246; 363–364; 397–400; 406–415; 421 (referring only Defendant Ludwick). It is not at all clear

how Defendant Kious is liable for the alleged actions of Defendant Ludwick.

 In addition, the cases upon which Plaintiff relies to establish a constitutional right to a

reasonably thorough investigation are materially distinguishable.  As highlighted by Defendant

Ludwick in his Reply Brief, *Kuehl v. Burtis* involved a warrantless arrest after a physical

altercation with many eyewitnesses.  173 F.3d 646, 648 (8th Cir. 1999); Doc. 112, at 2-3.  Here,

Plaintiff was arrested under a valid warrant issued by a judge, and Plaintiff has not identified any

witness claiming to have witnessed the murder first-hand.  *Kuehl* does not govern the conduct in

this case.  Next, Plaintiff relies on *County of Sacramento v. Lewis* to support his claim of false

arrest. 523 U.S. 833 (1998).  As discussed by Defendant Ludwick, *Lewis* is easily distinguished

from the present matter as there was *no arrest* in that case.  *Id.* at 843; Doc. 112, at 3.

 Finally, Plaintiff relies heavily on *Wilson v. Lawrence County* which Plaintiff calls "the

most on-point" of his cited cases. 260 F.3d 946 (8th Cir. 2001); Doc. 108-1, at 23.  This is telling

as the case is easily distinguishable from the present matter.  *Wilson* involved a murder and a false confession given by Mr. Wilson, whose mental capacity was later credibly questioned. *Wilson*, 260 F.3d at 949.  The false confession came after extensive and aggressive interrogation. *Id.* Mr. Wilson spent nine years in prison and was subsequently pardoned.  *Id.*  The aggressive methods to coerce the false confession, coupled with the lack of any reliable corroborating evidence, were essential to the Eighth Circuit's ruling in that case denying qualified immunity. *Id.* at 955 **("[A]bsent the evidence of coercion of Wilson's confession …, failure to investigate these additional leads would not support a claim of recklessness or deliberate intent and thus would not comprise a constitutional violation."**). (Emphasis added).  Here, there was no confession, and Plaintiff does not allege aggressive and extreme interrogation tactics.  Rather, Plaintiff merely alleges that Kious ignored leads.  Doc. 108-1, at 24-5.  This is the precise fact pattern that the Eighth Circuit states does not support a claim of recklessness or deliberate intent.  Accordingly, this claim must be dismissed.

## V.   PLAINTIFF'S COUNT II ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR DUE PROCESS VIOLATION FOR ALLEGED CONCEALING OF EVIDENCE MUST BE DISMISSED.

In his resistance, Plaintiff for the first time characterizes Count II as a claim for "conspiracy" rather than concealment of evidence.  However, Plaintiff's Second Amended Complaint does not contain a claim for "conspiracy." *See* Doc. 30. Indeed, this claim was previously included in Plaintiff's First Amended Complaint, however, Plaintiff chose to abandon this claim. *Compare* Doc. 8 *with* Doc. 30. These arguments should be disregarded.

In Plaintiff's Second Amended Complaint, he alleges that it was a due process violation under 42 U.S.C. § 1983 for Defendant Kious to provide inculpatory evidence to the Civil Plaintiffs in the underlying civil action but not to turn over exculpatory evidence to Mr. Carter.

10

In other words, Plaintiff appears to argue that by providing some information to the Civil

Plaintiffs, Kious was bound by the Constitution to provide alleged exculpatory evidence to Mr.

Carter.  Plaintiff further argues that Kious violated his right to have a fair civil trial.

In support of this argument, Plaintiff cites to no cases describing *how* Kious deprived

Plaintiff of a fair civil trial.  As explained in the Brief in Support of the Pre-Answer Motion to

Dismiss, no subpoena was ever served on Defendant Kious or Marion County to provide

information to Mr. Carter in the underlying civil action, nor was there any requirement under

*Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) to provide information to

Plaintiff. The case law showing this was clearly highlighted in Defendants' prior Brief. Notably,

Plaintiff makes no effort to argue that Defendants' explanation of the case law was wrong.

Plaintiff's argument under this claim in regards to Kious is wholly lacking both in fact and in

law.  This claim must be dismissed.

## VI.     PLAINTIFF'S COUNT III ALLEGING VIOLATION OF 42 U.S.C. § 1983 CLAIM FOR *MONELL* LIABILITY MUST BE DISMISSED.

Plaintiff argues in his Resistance that the *Monell* liability claim cannot be dismissed

against the County, because the actions of Defendant Kious during the investigation were so

pervasive to indicate a policy or custom on behalf of the County and because the County

allegedly provided Kious inadequate training. Importantly, Plaintiff does not identify any policy

or custom of the County.  Neither argument has merit, and this claim must be dismissed.

First, Defendant Kious did not engage in any unlawful conduct, and therefore, there can

be no *Monell* liability attached to the County. Second, it is well-established that *Monell* liability

cannot be imposed upon a single incident, unless taken by the highest officials responsible for

creating policy. *E.g.*, *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007).

Likewise, it is also established that *Monell* liability cannot be established from the actions of a

single employee, as this would turn *Monell* liability into a strict liability claim. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 833 (1985) ("the scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make city policy.") (Brennan, J., concurring); *Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 682 F.Supp. 451, 457 (E.D. Mo. 1988) ("To hold a governmental entity liable on the basis of a policy inferred from the "isolated misconduct of a single, low-level' employee would amount to imposing liability on the theory of "strict respondeat superior' which was 'rejected in *Monell.*'"); *Osborne v. Hawkins*, No. 1:05CV00018 JLH/BD, 2007 WL 1540234, at *6 (E.D. Ark. May 24, 2007) ("[A] municipality cannot be held liable solely because it employs a tortfeasor-or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." "[T]he scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful action of a single city employee not authorized to make city policy.") (internal citations removed). Plaintiff provides no case law showing that the alleged actions of a single, non-policymaking employee, in a single instance, can impose *Monell* liability upon the employee's employer.

Third, and in an effort to get around this defect in his claim, Plaintiff attempts to argue that the County did not properly train Defendant Kious before assigning Kious to Shirley Carter's murder investigation. In order to support this theory, Plaintiff grossly misstates Defendant Kious's prior deposition testimony in an effort to claim that the training Kious received regarding detective work was from Kious watching television shows, stating, "Defendant Kious acknowledged that the training he received on how to be a detective came from what he had seen on television." Doc. 39-1, p. 23.

However, a review of the deposition testimony this quote is taken from, attached to Doc. 47, at 27-29, identified as Exhibit D, shows Plaintiff is completely misrepresenting Kious's testimony.[4] The deposition transcript that this alleged "quote" was taken from, states, in relevant part:

> Q. During the early parts of the investigation, were there times where you and Agent Ludwick disagreed about what next steps should be?
>
> A. Yes.
>
> Q. What were those disagreements?
>
> A. Mainly on follow-up. **In August of 2015 my perception of what a detective was was kind of what I've seen other people do or on TV.** Me back from August 2015 to me now, I do things a lot differently, and this case is a large part of that just due to the complexity and the number of moving pieces.

Ex. D (emphasis added). As this statement shows, Kious in no way stated that the "training" he received was from watching television; rather, all he garnered from television at that point in his career was **_his perception_** of what detectives did. _Id._ This is hardly surprising considering Kious was a new detective at that time. In fact, this statement makes no mention at all of any training the County provided to Kious. Accordingly, Plaintiff's argument is based on a gross misrepresentation of Kious's prior deposition testimony and must be rejected.[5]

In summary, Plaintiff has identified no specific policy or custom to rely on for his _Monell_ liability claim. In an effort to manufacture an argument to preserve the claim, Plaintiff grossly

---

[4] The Court can consider this Exhibit on a Motion to Dismiss. As explained above, the Court can consider items outside the four corners of the Complaint, if the item is "necessarily embraced" by the Complaint. _Enervations_, 380 F.3d at 1066 (8th Cir. 2004). Here, the deposition is "necessarily embraced" because Plaintiff is making direct reference to the contents of the testimony from that deposition. _See Dittmer Props., L.P. v. F.D.I.C._, 708 F.3d 1011, 1021 (8th Cir. 2013) (finding it appropriate to consider agreements that were contemplated by or expressly mentioned in the complaint).

[5] Plaintiff also asks the Court to consider an alleged March 21, 2018 email. Despite being allegedly "highly relevant," Plaintiff has not felt it necessary to include this email in his original Complaint, First Amended Complaint, or Second Amended Complaint. Plaintiff identifies no legal basis that would permit the Court to consider facts Plaintiff himself failed to include in his Complaints. This request must be rejected.

misstates Kious's deposition testimony.  Plaintiff has not identified any grounds that would justify precluding dismissal on this claim, and this claim must be dismissed.

## VII.    PLAINTIFF'S COUNT IV ALLEGING MALICIOUS PROSECUTION MUST BE DISMISSED.

Plaintiff contends he can satisfy both the want of probable cause and malice elements needed to bring a malicious prosecution claim. As to the probable cause argument, Plaintiff simply repeats the arguments he raised in his Count I for False Arrest. As was explained in Section IV above, this argument is meritless and is insufficient to avoid dismissal.

Regarding the malice element,[6] as Plaintiff pointed out in his Resistance, ordinarily malice can be shown by actual malice, or can be inferred by a want of probable cause. Doc. 39-1, p. 28 (quoting *Wilson v. Hayes*, 464 N.W.2d 250, 260 (Iowa 1990)). However, Plaintiff failed to note that the ability to infer malice does not apply to all defendants. Indeed, the Iowa courts has made clear that when a plaintiff brings a claim for malicious prosecution against defendants who are public officials—which includes law enforcement officers acting in their official capacity— malice can only be shown through the actual malice standard. *Yoch v. City of Cedar Rapids*, 353 N.W.2d 95, 102-03 (Iowa Ct. App. 1984). For malicious prosecution claims brought against law enforcement officers like Defendant Kious, malice cannot be inferred from want of probable cause. *Id*. at 102. Under this standard, Plaintiff must show that Defendant Kious's instigation of criminal proceedings against Plaintiff was "primarily inspired by ill-will, hatred, or wrongful motive." *Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975). "If the defendant's

---

[6] Plaintiff argues that Defendants waived an argument that Plaintiff's claim fails to meet the element of malice. Defendants' Brief In Support of Pre-Answer Motion to Dismiss contains a clerical error in that a portion of the analysis for malice was inadvertently cut; however, the briefing does contain case law citations discussing the specific element of malice as required for a malicious prosecution claim.  *See* Doc. 100-1, at 12-13. Plaintiff is not prejudiced as it is clear from the briefing that Defendants intended to raise the element of malice as an issue. It is also noted as Defendants raised malice in the original motion to dismiss in 2020.  Should Plaintiff wish to do so, Defendants do consent to the ability for Plaintiff to file a sur-reply brief on this limited issue, to which Defendants would not intend further briefing.

purpose in instigating proceedings was otherwise proper, the fact he felt indignation or resentment toward the plaintiff will not subject him to liability." *Id*.

Here, Plaintiff has no evidence whatsoever to suggest that Defendant Kious instigated criminal proceedings against Plaintiff due to "ill-will, hatred, or wrongful motive." *Id*. Instead, Plaintiff's argument is that the Court should infer malice due to alleged defects in the criminal investigation of Shirley Carter's murder. *See* Doc. 39-1, pp. 28-32. However, this standard does not apply to Defendant Kious. Accordingly, this claim must be dismissed.

## VIII.  PLAINTIFF'S COUNT V ALLEGING ABUSE OF PROCESS MUST BE DISMISSED.

Plaintiff argues that his abuse of process claim against Kious was not based upon the underlying criminal action; but rather, was based upon the underlying civil action. At the outset, Plaintiff has failed to provide the applicable standard for abuse of process to individuals who were not parties to the underlying case. The law is clear that in order to bring a claim for abuse of process against a non-party to the underlying action, the plaintiff must show the non-party "actively participated" in the underlying action. CJS Process, § 154. As that section makes clear, "[i]n order to constitute active participation in litigation, for purposes of the tort of malicious abuse of process, more is required than encouragement, advice, or consultation." *Id*. Plaintiff alleges that Kious "abused" the civil action—to which he was not a party—by using the civil action to "violate" Plaintiff's constitutional rights in an effort to obtain statements and evidence against him that Kious otherwise could not have obtained from him; that Kious tried to "shore up" the criminal investigation in order to maintain the civil judgment against Plaintiff; and that Kious "conspired" with the Civil Plaintiffs by working with them in the civil action. None of these arguments have merit. More fundamentally, the allegations put forth by Plaintiff do not comport with the purpose that claims for abuse of process exist for.  Plaintiff points to no case

law to support his conclusion that a separate civil process can provide the basis for an abuse of process claim against a party that was not a party to the prior civil case.

Kious will address each claim in turn.

1.  Plaintiff's Arguments in Support of His Abuse of Process Claim Fail to Plead an Actionable Claim.

Plaintiff's abuse of process claim has a fundamental error to it: Kious's actions—even accepted as true—do not satisfy the "improper purpose" element. Indeed, this is one of the fundamental elements Plaintiff must show. *See e.g.*, *Palmer v. Tandem Mgmt. Srvs., Inc.*, 505 N.W.2d 813, 817 (Iowa 1993). Normally the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself. *Id.* This amounts to "a form of extortion in which a lawfully used process is perverted to an unlawful use." *Id.* "For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended." *Schmidt v. Wilkinson*, 340 N.W.2d 282, 284 (Iowa 1983). Courts interpreting this provision have stated that a typical abuse of process case is one in which a party—which is entitled to a certain amount of rent from another party—files a civil lawsuit against the other party in an effort to "coerce" the other party into agreeing to paying a higher rent. *See e.g.*, *id.* ("The usual case of abuse of process is one of *some form of extortion,* using the process *to put pressure upon the other to compel him* to pay a different debt or *to take some other action* or refrain from it.") (emphasis in original); *Sage Intern., Ltd. v. Cadillac Gage, Co.*, 556 F.Supp. 381, 389 (E.D. Mich. 1982) (same). In other words, the abuse of process claim is aimed at conduct involving the use of a legal process when *the party initiating the process* is not interested in obtaining the relief provided by the proceeding. *See id.* Indeed, this is consistent with the Restatement (Second) of Torts, § 682, which provides:

> One who uses a legal process, whether criminal or civil, against another **primarily** to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

(Emphasis added).  The comments of this section provide helpful guidance:

> b. *"Primarily."* The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus, the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm; nor does the instigation of justified bankruptcy proceedings become abuse of process merely because the instigator hopes to derive benefit from the closing down of the business of a competitor.

Restatement (Second) of Torts, § 682, cmt. b.

Plaintiff's argument is that Kious "abused" the civil proceedings by using the proceeding to obtain a judgment against Plaintiff, that would then allow law enforcement to charge Plaintiff with the murder of his mother. Doc. 39-1, p. 36 ("Kious used the civil process to accomplish a purpose for which it was not designed—to manipulate the trial into a civil liability finding which could then be leveraged into criminal charges.").

In other words, Plaintiff is arguing that the civil action was pursued in order to obtain a judgment against him—which is exactly what the purpose of the civil proceedings are for. As such, from Plaintiff's own argument, the primary purpose for initiating the civil action was to obtain a judgment against Plaintiff. *See id.*  "An incidental motive of spite or an ulterior purpose of benefit" will not support an abuse of process claim."  *Munz v. Parr*, 758 F.2d 1254, 1259 (8th Cir. 1985). It does not matter that Plaintiff alleges Kious may have had an ulterior or wrongful motive for assisting in the proceeding. *See* Restatement (Second) of Torts, § 682, cmt. b. Rather, all that matters is that the main purpose of the civil proceeding was for the purpose the proceeding existed for: to obtain a monetary judgment against another party. *Id.* Plaintiff's claim fails as a matter of law.

2.  <u>Plaintiff's Claim that Kious Abused the Underlying Civil Action in an Effort to Obtain Additional Statements and Evidence Fails to Support a Cause of Action for Abuse of Process.</u>

Even if the Court chose not to dismiss Plaintiff's abuse of process claim for the reason expressed immediately above, dismissal is still warranted. In support of this ground for liability, Plaintiff alleges Kious abused the underlying action by "providing questions" to counsel in the civil action to ask Plaintiff and by waiting until after the civil trial had occurred and using statements from the that trial to charge Mr. Carter with murder. Doc. 39-1, p. 34. Of particular note, Plaintiff has not cited a single case showing that these grounds have ever been used to support a finding of abuse of process. Regardless, Kious will address each separate subclaim.

First, in regards to Kious providing questions, there is nothing in the Second Amended Complaint to support this claim. In support of its position, Plaintiff states:

> When asked if Kious ever directed the Civil Plaintiffs' counsel to ask Plaintiff specific questions in Plaintiff's deposition, **Kious stated he '[didn't] remember anything specific**, but [he] very well could have.

*Id*. (emphasis added). From this statement of having no recollection, Plaintiff somehow deduces that Kious did in fact do the thing he had no recollection of doing, stating, "Kious was not entitled to question Plaintiff under oath at the time he provided questions to the Civil Plaintiffs to ask Plaintiff under oath in the Civil Lawsuit." *Id*. This is a gross misstatement of the alleged deposition testimony and must be rejected.

Second, in regards to waiting until after the civil trial concluded and using statements and evidence from that trial, Plaintiff's position contradicts basic, black-letter law regarding law enforcement's ability to collect and use evidence and ignores the fact that trials are open to the

public and a matter of public record. Even accepting Plaintiff's contention that police could not otherwise obtain the statements and evidence allegedly used prior to the trial, the fact remains that law enforcement could use this evidence because it was introduced into a public record at a trial that was open to the public. *Walter v. U.S.*, 447 U.S. 649, 656 (1980) (holding it is not unlawful for police to use evidence obtained through lawful means). Plaintiff provides no case law showing that it is unlawful for law enforcement to use evidence that is revealed in a public trial, nor could he. It is axiomatic that law enforcement can use statements and evidence that are publicly available.

Accordingly, all Plaintiff's Second Amended Complaint shows is that Kious has no recollection of requesting the Civil Plaintiffs ask Mr. Carter certain questions and that Kious may have relied upon publicly available statements and evidence. This ground fails as a matter of law and does not support a showing that Defendant Kious "abused" the civil case to which he was not a party.

3.    Plaintiff's Claim that Kious Abused the Underlying Civil Action by Allegedly Trying to "Shore Up" the Investigation to Maintain the Civil Judgment Fails to Support a Cause of Action for Abuse of Process.

Plaintiff's second ground is entirely puzzling, as it is directed at actions taken in furtherance of the criminal investigation and is wholly separate from any action taken during the course of the underlying civil action. Plaintiff provides no legal support for his incredibly broad claim that actions taken outside the scope of the legal proceeding underlying an abuse of process claim can give rise to such a claim. Nor could Plaintiff, as the case law makes clear that in order to establish such a claim, there must be the use of a legal process. *Iowa Supreme Ct. Attny. Disciplinary Bd. v. Barnhill*, 885 N.W.2d 408, 419 (Iowa 2016) (stating that "**use of a legal process**" is a necessary element to an abuse of process claim). It is entirely unclear how actions

taken in furtherance of a criminal investigation could constitute an abuse of a civil lawsuit.

Plaintiff's Resistance provides no case law to help explain this issue.

Further, the only citation Plaintiff makes in support of this argument is to paragraph 295 of the Second Amended Complaint, which alleges that Charity Roush was interviewed by Kious on November 13, 2018 and that Ms. Roush provided alleged exculpatory evidence. Sec. Am. Complaint, ¶ 295. From this, Plaintiff attempts to extrapolate that Defendant Kious did this in an effort to be able to say "he followed up on leads" so that the verdict in the civil action would not be overturned. Doc. 39-1, p. 35. However, there is nothing in the Complaint that alleges that this was Kious's motive for interviewing Ms. Roush (or that Kious had any specific motive for interviewing Ms. Roush). Rather, Plaintiff's argument is pure conjecture, wholly unsupported by any allegations in his Second Amended Complaint.

This ground fails as a matter of law.

4.    <u>Plaintiff's Claim that Defendant Kious "Conspired" with the Civil Plaintiffs in the Underlying Civil Action Fails to Support a Cause of Action for Abuse of Process.</u>

Finally, Plaintiff alleges that Defendant Kious abused the underlying civil action by "conspiring" with the Civil Plaintiffs. Plaintiff attempts to support this argument by citing to portions of the Second Amended Complaint which alleges: 1) that Kious received information from the girlfriend of Billy Carter (Plaintiff's father); 2) that Kious met with Civil Plaintiffs' counsel prior to charges being filed against Plaintiff; and 3) that Kious agreed to provide certain criminal investigation information to Civil Plaintiffs in exchange for a conversation with the Civil Plaintiffs. Once again, Plaintiff has not cited any case law showing that any of these grounds can support an abuse of process claim.

Further, Plaintiff's allegations show only that Kious agreed to cooperate with the Civil Plaintiffs. However, as explained above, in order to show Kious "actively participated" in the

civil action, "more is required than encouragement, advice, or consultation." CJS Process, § 154. Plaintiff's allegations only show that, at most, Kious provided advice and consultation to the Civil Plaintiffs. This ground fails as a matter of law.

Accordingly, Plaintiff has failed to articulate any basis to support a claim for abuse of process against Kious. This claim must be dismissed.

### IX.     PLAINTIFF'S COUNT VI ALLEGING DUE PROCESS VIOLATION BROUGHT UNDER 42 U.S.C. § 1983 FOR FAILURE TO INVESTIGATE MUST BE DISMISSED.

A government official's failure to investigate violates due process only upon a plaintiff showing "that each individual defendant 'intentionally or recklessly failed to investigate, thereby shocking the conscience.'" *Johnson v. Moody*, 903 F.3d 766, 733 (8th Cir. 2018) (quoting *Akins v. Epperly*, 588 F.3d 1178, 1184 (8th Cir. 2009)). Plaintiff asserts that his claim for due process violation for an alleged failure to investigate should not be dismissed. Specifically, Plaintiff argues that the Second Amended Complaint shows Kious purposefully ignored evidence showing Plaintiff's innocence and that Kious employed systematic pressure to implicate Plaintiff. Doc. 39-1, pp. 37-42. Plaintiff's arguments fail in several respects.

First, Plaintiff ignores the fact that law enforcement officers are not required to undertake every single possible effort to exonerate a suspect. *Baker v. McCollan*, 443 U.S. 137, 145 (1979). In addition, law enforcement officers cannot be held liable for not believing certain witnesses or discounting evidence that does not fit with the other evidence in the case. *Winslow v. Smith*, 696 F.3d 716, 734 (8th Cir. 2012). Plaintiff's arguments are inconsistent with this clearly-established law, because Defendant Kious cannot be held liable for not believing every witness who provided information and for not following up on every single lead.[7] Indeed, Plaintiff's own

---

[7] The need for this discretion is clearly illustrated by Plaintiff's Second Amended Complaint. While Plaintiff continuously harps on the leads and exculpatory evidence that was not followed up on, a close review of the

words indicate that dismissal of this claim is necessary, stating, "what [the Second Amended Complaint] does allege is that Kious disregarded myriad leads and viable exculpatory evidence because it did not fit Kious's theory of the crime." Doc. 39-1, p. 38. The law explained above clearly indicates law enforcement officers cannot be held liable for such conduct. *Baker*, 443 U.S. at 145; *Winslow*, 696 F.3d at 734.

Second, the case law analyzing the failure to investigate does not support Plaintiff's position. The Eighth Circuit has made clear that failing to follow-up on leads or ignored conflicting evidence does not support a finding of a due process violation. *Moody*, 903 F.3d at 773 ("Evidence that investigators ignored factual inconsistencies in the evidence, negligently failed to look into leads, and did not question the alleged victim's credibility is insufficient to establish that they investigated in a reckless, conscience-shocking manner."); *Clemmons v. Armontrout*, 477 F.3d 962, 966 (8th Cir. 2007) (in case where plaintiff had murder conviction and death sentence overturned, finding no constitutional violation for failure to investigate when officer failed to investigate another suspect named by an eyewitness shortly after the murder occurred); *Akins*, 588 F.3d at 1184 (8th Cir. 2009) (in noting that officers did not engage in any improper means of attempting to generate evidence against plaintiff, finding plaintiff's claim for failure to investigate failed in case where officers' investigation resulted in flawed evidence and where officers negligently failed to investigate leads and inconsistencies in the evidence).

Indeed, the cases in which the federal courts have refused to dispose of due process claims for failure to investigate involve cases in which law enforcement engaged in overt,

---

paragraphs cited to by Plaintiff shows that the "leads" and "exculpatory evidence" were wildly contradictory in nature. Indeed, Plaintiff's Second Amended Complaint states that tips were received that each of the following individuals were connected in some way to Shirley Carter's murder: Joel Followill, John Followill, Joseph Sedlock, Matt Kamerick, Callie Shinn, Michelle Dnaiels, Jason Beaman, Jeremiah Larid, Amber Shinn, Chris Brees, Kory Ford, Nichole Sedlock, Rory Pearson, Sue Dabb, Jim Dabb, Bill Carter, and Jason Carter. As this clearly shows, law enforcement was provided with numerous tips that pointed in numerous different directions. In such cases, law enforcement should not be compelled to follow-up on leads that do not fit the evidence obtained. Such a requirement would place an enormous burden on law enforcement and result in the waste of precious resources.

wrongful conduct to manufacture evidence or when law enforcement had no reasonable basis to believe or rely upon the evidence pointing towards the plaintiff's guilt. *See Winslow*, 696 F.3d at 734 (reversing grant of summary judgment on failure to investigate claim because officers began coaching witnesses to provide false testimony to convict plaintiff); *Wilson v. Lawrence Cnty.*, 260 F.3d 946, 957 (8th Cir. 2001) (affirming denial of summary judgment on failure to investigate claim when officers failed to investigate other leads despite only evidence being a confession from plaintiff—who had limited intelligence and mental capacities—that officers had knowingly obtained through coercive interrogation methods); *Furgison v. Short*, 2:14-cv-04062-NKL, 2015 WL 4877539, at *29 (W.D. Mo. Aug. 14, 2015) (denying summary judgment on failure to investigate claim when officers coached witness into providing false testimony in effort to convict plaintiff).

Here, Plaintiff's Second Amended Complaint shows only that Defendant Kious failed to look into leads or failed to uncover all possible exculpatory information. At most, these facts indicate negligence on the part of Defendant Kious. However, that is insufficient to impose liability for a due process violation. *Johnson*, 903 F.3d at 773 ("negligent failure to investigate inconsistencies or other leads" is not "conscience-shocking misconduct."). Plaintiff has no evidence and makes no factual allegations that suggest Defendant Kious engaged in conduct similar to those where failure to investigate claims were not disposed of, such as pressuring witnesses to provide false testimony.

This claim must be dismissed.

## X.    CONCLUSION

For the reasons set forth above, Plaintiff has failed to articulate any basis on any of the claims alleged that is sufficient to prevent dismissal. The Defendants, Marion County, Iowa and Reed Kious, Marion County Deputy Sheriff in his individual capacity, respectfully request the Court dismiss Plaintiff's Second Amended Complaint in its entirety.

DATED this 20th day of March, 2023.

> MARION COUNTY, IOWA, AND REED KIOUS, DEFENDANTS,
>
> By:    _____
> Jason C. Palmer AT0006089
> LAMSON DUGAN & MURRAY, LLP
> 1045 76th Street, Suite 3000
> West Des Moines, Iowa 50266
> Telephone:    (515) 823-0458
> Facsimile:    (402) 397-7824
> E-mail:    jpalmer@ldmlaw.com
>
> ATTORNEY FOR MARION COUNTY, IOWA AND
> REED KIOUS

Original filed.

Copy to:

Glen S. Downey
**LAW OFFICES OF GLEN S. DOWNEY**
5214 Ingersoll Avenue
Des Moines, Iowa 50312
Telephone:    (412) 865-7110
Facsimile:    (515) 259-7599
E-mail:    glen@downey-law.net

Christine E. Branstad
Nathan Olson
**BRANSTAD & OLSON LAW OFFICES**
2501 Grand Avenue, Suite A
Des Moines, Iowa 50312

Telephone:     (515) 224-9595
Facsimile:     (515) 281-1474
E-mail:        Branstad@BranstadLaw.com
               olson@branstadlaw.com

Alison F. Kanne
Steven P. Wandro
**WANDRO & ASSOCIATES, P.C.**
2501 Grand Avenue, Suite B
Des Moines, Iowa 50312
Telephone:     (515) 281-1475
Facsimile:     (515) 281-1474
E-mail:        akanne@2501grand.com
               swandro@2501grand.com

ATTORNEYS FOR PLAINTIFF

Jeffrey C. Peterzalek
Tessa Register
**OFFICE OF THE ATTORNEY GENERAL OF IOWA**
1305 E. Walnut Street
Des Moines, Iowa 50309
Telephone:     (515) 281-5164
E-mail:         jeffrey.peterzalek@ag.iowa.gov
               Tessa.Register@ag.iowa.gov

ATTORNEYS FOR DEFENDANT MARK LUDWICK

<div style="border:1px solid black; padding:10px;">

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing instrument was served upon one of the attorneys of record for all parties to the above-entitled cause by serving the same on such attorney at his/her respective address/fax number as disclosed by the pleadings of record herein, on the 20th day of March, 2023 by:

☐ U.S. Mail          ☐ FAX
☐ Hand Delivered     ☐ UPS
☐ Federal Express    ☑ Other: CM/ECF
/s/ Analese Marie Hauber

</div>